$400

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

DONALD J. KRAUSS, CINDY G. BRILLMAN, :
FIGHT BACK d/b/a FIGHTBACK FOR
AUTISM, JC REHAB, INC. &                      :
CGB REHAB, INC.                               :
                                          :                    17      0773
         *Plaintiffs,*                    :
                                          :          **CIVIL ACTION NO. _____**
v.                                            :
                                          :
IRIS USA, INC., KV LOAD, INC.,                :
& C.H. ROBINSON WORLDWIDE, INC.,              :
                                          :
         *Defendants.*                    :

**COMPLAINT**

     Plaintiffs Donald J. Krauss, Cindy G. Brillman, Fight Back, Inc. d/b/a Fightback for

Autism, JC Rehab, Inc. and CGB Rehab, Inc., by their undersigned counsel, files their Complaint

against Defendants IRIS USA, Inc., KV Load, Inc. and C.H. Robinson Worldwide, Inc., and in

support thereof aver as follows:

**PARTIES**

     1.    Plaintiff Donald J. Krauss is an adult individual who is a citizen and resident of

the Commonwealth of Pennsylvania.

     2.    Plaintiff Cindy G. Brillman is an adult individual who is a citizen and resident of

the Commonwealth of Pennsylvania.

     3.    Plaintiff Fight Back, Inc. d/b/a Fightback for Autism ("Fight Back") is a

Connecticut non-profit corporation with its principal place of business located at 1117 East

Putnam Avenue, Suite 215, Riverside, Connecticut 06878.  Ms. Brillman is the CEO of Fight

Back, Inc.  Fightback for Autism is a division of Fight Back, Inc.  At all times material hereto,

Fight Back, Inc. was doing business as Fightback for Autism.

4.      Plaintiff JC Rehab, Inc. is a corporation duly organized, registered to transact business in the Commonwealth of Pennsylvania and with its principal place of business located at 409 Wyntre Lea Drive, Bryn Mawr, Pennsylvania 19010. Ms. Brillman is the President of JC Rehab, Inc.

5.      Plaintiff CGB Rehab, Inc. is a is a corporation duly organized, registered to transact business in the Commonwealth of Pennsylvania and with its principal place of business located at 409 Wyntre Lea Drive, Bryn Mawr, Pennsylvania 19010. Ms. Brillman is the President of CGB Rehab, Inc.

6.      Defendant IRIS, USA, Inc. ("IRIS") is corporation registered to transact business in the State of Wisconsin with a principal place of business located at 11111 80th Ave., Pleasant Prairie, Wisconsin 53158 and may be served with process through its registered agent, C T Corporation System, 8020 Excelsior Dr. Suite 200, Madison, Wisconsin 53717, or wherever it may be found.

7.      Defendant KV Load, Inc. is an Illinois corporation with its principal place of business located at 684 S. Barrington Road, Unit 113, Streamwood, Illinois 60107 and may be served with process through its President and registered agent Svitlana Bazavlyak at 721 East Madison Street, Unit 101G, Villa Park, Illinois 60181 or wherever it may be found. Upon information and belief, KV Load, Inc. is a U.S. Department of Transportation Interstate registered motor carrier.

8.      C.H. Robinson Worldwide, Inc. is a Delaware corporation registered to transact business in the State of Minnesota with its principal place of business located at 14701 Charlson Road, Eden Prairie, Minnesota 55347-5076 and may be served with process at its registered office located at 2345 Rice Street, Suite 230, Roseville, Minnesota 55113, with its registered

2

agent located at Corporation Service Company, 2711 Centerville Road, Wilmington, Delaware 19808 or wherever it may be found.

## JURISDICTION AND VENUE

9.      Jurisdiction exists by virtue of diversity of citizenship. 28 U.S.C. § 1332. The amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

10.     Venue is proper in this judicial district because it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. §§ 1391(a) and 1391(b)(2).

## NATURE OF THE CASE

11.     LEGO System A/S, a Danish company, manufactures a line of popular construction toys consisting of interlocking plastic bricks commonly known as "LEGOs."

12.     Fight Back through its division Fightback for Autism is dedicated to assisting autistic individuals and their families secure full access to medical and therapy services such as home educational programs. Fight Back has no employees but instead relies on volunteers to operate. At all times material hereto, Plaintiffs Mr. Krauss, Ms. Brillman, JC Rehab and CGB Rehab were providing volunteer support services to Fight Back. Fight Back provides all the therapy services for children, adults and to the elderly, formulates and manages all programming and fundraising services through help from CGB Rehab and JC Rehab.

13.     Fight Back sells LEGO play tables, among other products, which incorporate LEGO products, called baseplates as the table-top.

14.     The LEGO baseplate at issue in this matter is a green plastic board measuring 10" x 10" designed to be used as a platform for building with LEGO blocks. Lego manufactured this

3

green baseplate for over 25 years, until 2015, when Lego decided to discontinue manufacturing this color baseplate and started producing a lighter lime green color. However, this original green baseplate was extremely popular for more than 25 years and it still remains a popular color with consumers.

15.     IRIS is a manufacturer/distributor in the United States of plastic storage products. IRIS sold LEGO compatible products, incorporating certain LEGO designs into some of their own products, until they lost their contract with LEGO at the end of June 2014.

16.     At the time IRIS's LEGO contract ended, IRIS had in its possession a number or LEGO baseplates that were originally shipped by LEGO in Denmark to IRIS on 31" x 47" European ("Euro") palettes. As part of this original shipment:

> a.     Each box of the subject product weighed 28 lbs. and contained 125 LEGO baseplates.
>
> b.     Each pallet was loaded with 36 boxes, totaling 4,500 LEGO baseplates.
>
> c.     Each pallet shipped from Denmark to IRIS was single-stacked and had a total weight of 1,053 lbs., including a 45 lbs. pallet.

17.     On June 30, 2014, Cindy Brillman bought 10,000 LEGO baseplates from IRIS at a unit price of $1.50 each, totaling $15,000. As part of this transaction, the baseplates were packed on 40" x 48" pallets, each containing 40 boxes of 125 baseplates, totaling 5,000 baseplates per pallet.

18.     After June 2014, IRIS was no longer permitted by LEGO to sell the excess baseplates IRIS had in its possession.

19.     In August 2014, IRIS told Ms. Brillman that it had in excess of 180,000 baseplates in its possession.

4

20.    Ms. Brillman, on behalf of Fight Back, contacted LEGO directly and explained the non-profit's program and its LEGO Table project. Ms. Brillman asked LEGO to allow IRIS to sell its remaining 180,000 baseplates in inventory to Fight Back.

21.    On January 12, 2015, Lee Allentuck, the Vice President of Outbound Licensing at LEGO, gave his approval by email for IRIS to sell the excess LEGO baseplates in its inventory to Fight Back. Nicole Reiser of IRIS was copied on this communication.

22.    In a second email, Ms. Brillman asked LEGO if it would waive its royalty so the price could be reduced to $1.00 or less per unit. This was a significant reduction in price for the product, since the wholesale price of each baseplates was typically $5.00-$6.00 (replacement value) and the retail price was normally more than $10.00 per baseplate.

23.    LEGO agreed to the terms proposed by Ms. Brillman, allowing Fight Back to purchase the remaining inventory of baseplates at IRIS for $1.00 per baseplate.

24.    In January 2015, David Conrad, a sales representative for IRIS, told Ms. Brillman that the inventory was still in excess of 180,000. Ms. Brillman, on behalf of Fight Back, agreed to purchase the entire inventory. After recounting the inventory, Mr. Conrad reported that there were approximately 27,000 less baseplates in inventory, leaving a total of 153,117.

25.    On January 29, 2015, Mr. Conrad asked Ms. Brillman to send him by email the IRIS pallet diagram he had previously sent to her in September 2014 showing how the first shipment of 10,000 LEGO baseplates were shipped. Mr. Conrad asked that this IRIS pallet diagram be returned to him so he could work on single-stacked shipping configuration in a 53-foot trailer for the new order.

5

26.     Also in that September 2014 email, Mr. Conrad attached the pallet dimensions for the baseplates. In prior 2014 emails, Mr. Conrad had stated to Ms. Brillman that the pallets contain 5,000 baseplates packed in 40 boxes.

27.     Between Mr. Conrad and Ms. Brillman, it was decided that Mr. Conrad would handle the shipping, so he could lay out the best truckload to minimize double stacking of the pallets. Due to the size and weight of each pallet, it was agreed that double stacking pallets would be avoided in the shipment to minimize the risk of tipping, which could jeopardize safety and damage the product.

28.     In the last conversation between Mr. Conrad and Ms. Brillman before shipping, Mr. Conrad stated that only one pallet was to be double stacked. Further, Mr. Conrad stated that thirty 40" x 48" pallets containing 40 boxes on each pallet, as indicated on the IRIS pallet diagram, would leave only about 24 boxes to be double stacked.

29.     On February 4, 2017, IRIS provided a quotation to Fight Back for the sale of 153,117 LEGO baseplates at a price of $1.00 per unit, for a total of $153,117.00, plus $2,250.00 in shipping and handling charges, for a grand total of $155,367.00.

30.     Ms. Brillman personally paid IRIS for the LEGO baseplates with a certified check in the amount of $155,367.00, which was delivered to IRIS on February 12, 2015.

31.     Ms. Brillman confirmed by email the delivery address to a Public Storage facility with no loading dock in Newtown Square, Pennsylvania. Ms. Brillman stated that a fork lift would be onsite to unload the shipment.

32.     IRIS hired C.H. Robinson, a freight broker, to handle shipping of the order. C.H. Robinson and/or IRIS then retained the services of KV Load, Inc., a freight shipping and

6

trucking company, to pick up the shipment from IRIS in Pleasant Prairie, Wisconsin and to deliver the order to Fight Back at the Public Storage facility in Newtown Square, Pennsylvania.

33.     At all times material hereto, IRIS, C.H. Robinson and KV Load were agents of each other and/or joint venturers in this transaction. At all relevant times herein, IRIS, C.H. Robinson and KV Load were engaged in a joint enterprise. IRIS, C.H. Robinson and KV Load agreed to a mutual undertaking with a common purpose of pecuniary interest wherein IRIS paid C.H. Robinson and KV Load to ship the LEGO baseplates to Fight Back and Ms. Brillman, and IRIS was paid by Fight Back and Ms. Brillman to perform the shipping.

34.     On or around February 19, 2015, at the direction of C.H. Robinson a KV Load, Inc. truck and driver arrived at IRIS where the shipment was loaded into the truck's 53-foot trailer and counted by IRIS employees prior to departure. The trailer was then sealed and a seal number was generated by IRIS employees to be verified upon delivery.

35.     At 11:55 AM on the day of delivery, February 20, 2015, Mr. Conrad informed Ms. Brillman by email that the load had been shipped on February 19, 2015 with 18 pallets and to please make sure a forklift was onsite upon delivery to unload the shipment. No pallet size or heights were mentioned by Mr. Conrad.

36.     On February 20, 2015, the truck arrived at the delivery site and the trailer was opened. The 53-foot trailer appeared to be significantly empty as a large portion of it was unused. Contrary to the prior arrangements made by Mr. Conrad and Ms. Brillman, all of the pallets were double stacked, wrapped with plastic and positioned all the way in the front of the trailer, furthest from the door.

37.     When the tractor trailer arrived in Pennsylvania, the load in the trailer was not properly balanced. Contrary to federal and state law weight limits and regulations, the trailer

7

load exceeded the 34,000 lbs. weight limit for dual drive or tandem trailer axles, and all 35,108 lbs. of the shipment was placed on the front drive axles of the truck rather than distributed evenly between the front drive axles and the rear trailer axles.

38.     The pallet stacks were not properly secured as they had shifted during transport. On many of the 18 double stacks, the top pallets had moved and were overhanging the boxes stacked on the bottom pallets.

39.     Mr. Conrad and Ms. Brillman's agreement that IRIS would ship the pallets in a way to minimize double stacking was not followed.

40.     Moreover, the LEGO baseplates were shipped on European-manufactured pallets measuring approximately 31" x 47", not the 40" x 48" pallets as agreed.

41.     Upon information and belief, the pallets used were the original Euro pallets that LEGO used to ship the baseplates from Denmark to Wisconsin in 2013.

42.     The original LEGO shipment was shipped from LEGO to IRIS single stacked.

43.     The Euro pallets that arrived in Pennsylvania lacked a bottom board or any cross bracing.

44.     Additionally, the Euro pallets shipped from LEGO in Denmark have manufacturing dates from 2009 to 2012 do not contain a control staple, which is an indication of independent quality assurance used by the European Pallet Association ("EPAL") internationally. Quality control is the key criterion for the reliable, safe deployment of EPAL Euro pallets within the supply chain of international companies.

45.     The Euro pallets used by the Defendants to ship heavy goods to the Plaintiffs were substandard in other ways. For example, the pallets would have not met the ISPM 15 compliance standards for wood packaging materials. International Standards For Phytosanitary

8

Measures No. 15 ("ISPM 15") is an International Phytosanitary Measure developed by the International Plant Protection Convention ("IPPC") that directly addresses the need to treat wood materials of a thickness greater than 6 mm, used to ship products between countries. ISPM 15 is one of the most essential conditions for unrestricted use of load carriers in the international movement of goods.

46.     Upon information and belief, IRIS received these substandard pallets in 2013, single-stacked with goods, but IRIS had not unloaded the merchandise on them to check the pallets for damage after they were received from Denmark. If IRIS had checked the pallets, they would have discarded the pallet that eventually failed during the delivery to Fight Back as they would have identified the rust around the pallet and defects in the structural integrity of the wood.

47.     IRIS knew or should have known, through the exercise of reasonable investigation and common knowledge in the shipping industry, that the Euro pallets it used to ship goods to the Plaintiffs were defective and substandard as they no quality control staple or markings indicating they were made within the quality guidelines for Euro pallets.

48.     Furthermore, IRIS knew or should have known, through the exercise of reasonable investigation and common knowledge in the shipping industry, that the pallets it used to ship goods to the Plaintiffs would not meet the guidelines to be used in the international pool of Euro pallets internationally and, therefore, they could not be used again for shipping.

49.     IRIS knowingly disregarded a shipping diagram created specifically for the safe shipment of the LEGO baseplates, which was based on using 40" x 48" pallets, with boxes of the goods single stacked to better distribute the weight of the load and to ensure safety.

50.     Further, this double stack load/pallet configuration was not approved by LEGO or Fight Back and it was contrary to the agreed upon shipping plan with IRIS. The pallets had even been stored in single stacks at IRIS's warehouse.

51.     Thirty of the 40" x 48" American pallets used by IRIS in their pallet configuration diagram would have easily fit in the 53-foot trailer avoiding virtually all double stacking. Only 24 boxes would have remained, which could have been distributed among thirty 40" x 48" single stacked pallets or, alternatively, one additional 40" x 48" pallet with 24 boxes could have been double stacked, which would have weighed significantly less and would have put less stress on the bottom pallet than a fully loaded Euro pallet in a double stack configuration. IRIS, instead of following its own pallet diagram with 40" x 48" pallets, it chose to double stack the Euro pallets for shipping without any explanation.

52.     A single stack configuration would have been the safest method to avoid personal injury, property damage and damage to the goods. Further, single stacking the pallets would have balanced the load enough in the trailer to comply with federal and state law weight limits and regulations.

53.     IRIS, who loaded the shipment, also did not adequately ensure that the load was secured to prevent shifting and damage to the boxes during transit.

54.     IRIS, C.H. Robinson and KV Load were each responsible for ensuring that the load was packed properly and safely, free from defects, and ensuring that the shipment would not put their employees, agents, contractors, customers or the public at risk from harm to their person and property.

55.     IRIS, C.H. Robinson and KV Load knew or should have known that the load was defective and unreasonably dangerous because of the use of substandard, damaged and/or defect

10

pallets, which without evidence of EPAL EURO control staples or indication that they had undergone any quality inspection internationally or in the United States, and were shipped from Denmark to the United States singled stacked. It was foreseeable that, as a result of double stacking Euro pallets with heavy loads, the boxes on the bottom pallets and the bottom pallets themselves would be damaged and would collapse under the weight of the top pallets.

56. IRIS knew or should have known through the exercise of reasonable care that these substandard pallets should not be used in the United States. Indeed, this is why IRIS originally created shipping configuration guidelines based on 40" x 48" pallets they used to send LEGO baseplates to Ms. Brillman in 2014, and used when Ms. Brillman bought two pallets of LEGO baseplates in 2014.

57. The double stacking of pallets was obvious as soon as the driver opened the truck doors on the date of delivery and Ms. Brillman saw a half empty 53-foot trailer. Ms. Brillman immediately called Mr. Conrad at IRIS. Mr. Conrad stated that he was not at work when the shipment went out and did not know it was double stacked. Mr. Conrad confirmed that he had relayed Ms. Brillman's mandate for no or minimal double stacking, he did not know what happened or why they were double stacked as he was not onsite when the load went out. Mr. Conrad also could not answer why 40" x 48" pallets were not used as specified in IRIS's pallet diagram and which he had discussed in detail with Ms. Brillman.

58. At the delivery site, the driver for KV Load did not have any equipment to move the pallets, such as a pallet jack. Mr. Conrad stated to Ms. Brillman that the driver was supposed to have a pallet jack. Ms. Brillman then was forced to supply her own pallet jack to the driver.

11

59.     After being provided with the pallet jack, the KV Load driver began to move the double stacked pallets from the front of the trailer to the rear of the trailer, one at a time so the forklift could lift each stack and lower it to the ground.

60.     During this process, the truck driver moved a double stacked pallet to the rear of the trailer. Mr. Krauss, operating the fork lift, already had one double stacked pallet on it at that time, and was turned away from the trailer.

61.     Without warning and without anyone touching the pallet at the rear of the trailer, the bottom pallet of the double stacked pallet cracked and both top and bottom pallets, weighing approximately 2,000 lbs. each, fell directly on to Mr. Krauss while he was in the seat of the forklift just a few feet from the opening of the trailer. The pallets were wrapped together with layers of plastic packing wrap so the entire weight of both pallets fell directly on Mr. Krauss and the forklift.

62.     Mr. Krauss was severely injured and could not breathe as he was pinned down by the weight of the load on the collapsed pallets.

63.     The truck driver tried to move boxes off of Mr. Krauss, but could not as boxes and the two pallets were wrapped together in layers of plastic packing wrap.

64.     After approximately 5-6 minutes, Mr. Krauss was able to force his leg and twist his unpinned right knee in a position to back up the fork lift, which saved his life.

65.     The truck driver helped to clean up the 72 boxes that had fallen. Many of the boxes were broken the LEGO baseplates were damaged.

66.     The few remaining pallets were unloaded and the KV Load truck and truck driver departed.

12

67.     Directly as a result of the collapse of the double-stacked pallet, Mr. Krauss suffered serious physical injuries including, but not limited to, a broken bone in his left forearm, a laceration in left forearm, crushed and compressed vertebrae resulting in Mr. Krauss having severe limitations in bending and twisting, bruises and abrasion on the left side of his head and scalp, immediate loss of a tooth and loosening of three other teeth which later fell out as well, abrasion on left ear, dislocation of his right kneecap, abrasions to his right knee, suffered from two strokes and now must wear a heart monitor.

68.     Mr. Krauss experienced severe pain and suffering due to the injuries sustained in the accident. Mr. Krauss now has limited mobility, has difficulty walking up a flight of stairs and has difficulty remaining in stationary positions for extended periods of time. He is unable to bend and turn or lift heavy objects unless something is handed to him above his waist level.

69.     Prior to this accident, Mr. Krauss had jogged up to 5 miles a day with few medical issues. Today, Mr. Krauss has difficulty walking up a flight of stairs. Mr. Krauss has not been able to hike, hunt, or take care of the trees he grows on his two properties as he always had done before. He routinely volunteered for Fight Back, and helped pack the LEGO tables, carry them down steps, and transport the packed tables to Federal Express. He can no longer independently perform those functions for Fight Back.

70.     Further, Mr. Krauss has suffered from severe emotional distress as a result of the accident. Mr. Krauss' symptoms include, but are not limited to: depression, irritability, anger, loss of memory and concentration abilities, mood swings, anxiety/edginess, sexual dysfunction, changes in eating patterns, hostility, feeling ineffective and increased impulsive behaviors. The loss of Mr. Krauss's mobility, to be able to walk distances or to walk up steps has been especially devastating to him.

71.     Mr. Krauss has incurred significant medical expenses in treating the above injuries and symptoms.

72.     After the accident, an inspection of the shipment was conducted.  It was found that:

   a.     approximately 9,000 baseplates were damaged in the accident;

   b.     more than 96,000 baseplates arrived which were not involved in the collapse were defective or were damaged during shipment; including a number of baseplates from IRIS's Texas warehouse which were carelessly thrown into plastic boxes without packing material or cushioning which caused them to dent and crack during shipment;

   c.     the order was short by 7 boxes or 875 baseplates; and

   d.     the bottom pallet of the collapsed double stack was either defective or previously damaged from improper use as approximately 1/3 of the pallet broke away during the collapse.

73.     The replacement value of the LEGO baseplates is significantly higher than Fight Back's purchase price of $1.00 per unit.  Further, the color of the LEGO baseplates ordered by Fight Back were discontinued and is no longer available, making them even more valuable than an equivalent replacement.

74.     At no time has IRIS reimbursed Fight Back for the damaged, defective or shorted products.

75.     Further, Plaintiffs shipped a box of damaged LEGO baseplates to IRIS by overnight shipping at IRIS's request.  Despite IRIS's promises to reimburse Plaintiffs for this box of 125 damaged LEGO baseplates plus overnight shipping, IRIS has also failed to do so.

14

76.     The loss of the damaged, defective and shorted baseplates has caused Fight Back
to suffer from significant financial harm. Such harm includes, among other things, past and
future lost profits and loss of business opportunities.

77.     Further, Mr. Krauss' fork lift was badly damaged as a direct result of the collapse
of the double stacked pallet. Damages to the fork lift include, but is not limited to:  broken
steering wheel, steering column was bent internally, right front drive axle damaged, right front
wheel stud bolts broken, air intake shattered, seat and hood damaged, fuel gauge broken and
ignition

78.     Plaintiffs have also incurred costs associated with storing the damaged and/or
defective baseplates of over $300.00 per month.

79.     On February 24, 2015, a representative of KV Load sent an email to Cindy
Brillman, admitting that "the shipper loaded several pallets on double stacks" and "the freight
was improperly loaded by the shipper."

## COUNT I

### NEGLIGENCE

80.     The allegations of paragraphs 1 through 78 are incorporated herein by reference
with the same force and effect as if set forth in full below.

81.     Defendants IRIS, C.H. Robinson and KV Load individually and through their
agents, employees and/or joint venturers owed a duty of reasonable care to Plaintiffs to properly
inspect, load, secure, transport and deliver the shipment of LEGO baseplates to Plaintiffs in a
safe and reasonable manner, to protect Fight Back's agents and/or volunteers from the risk of
physical harm, to protect Fight Back's agents and/or volunteers' property from the risk of
damage and/or loss, to warn Fight Back's agents and/or volunteers regarding the risk of personal

15

injury due to the condition of the shipment, to comply with the manufacturer and/or IRIS's shipping instructions and/or recommendations, to comply with the agreements between Fight Back and IRIS, to inspect the goods and prior to shipment to ensure they were free from defect, damage or shortages and to comply with Federal Motor Carrier Safety Regulations.

82.     Defendants IRIS, C.H. Robinson and KV Load also had a duty to take reasonable precautions in the hiring, retention and supervision of their employees, agents and independent contractors to protect Plaintiffs' personnel and property from the risk of harm.

83.     Defendants IRIS, C.H. Robinson and KV Load breached this duty by failing to properly inspect, load, secure, transport and deliver the shipment of LEGO baseplates to Fight Back in a safe and reasonable manner, by failing to ensure that no dangerous condition would be created by the loading, securing, transporting and delivering of the goods, by failing to prevent or minimize the risk of physical harm or injury to Fight Back's agents and/or volunteers, by failing to warn Fight Back of the risks of physical harm or injury and the risks of property damage and/or loss due to the condition of the shipment, by failing to comply with the manufacturer and/or IRIS's shipping instructions and/or recommendations, by failing to comply with the agreements between Fight Back and IRIS, by failing to inspect the goods prior to shipment to ensure they were free from defect or damage, by failing to comply with Federal Motor Carrier Safety Regulations and by failing to take reasonable precautions in the hiring, retention and supervision of their employees, agents and independent contractors to protect Plaintiffs' personnel and property from the risk of harm.

84.     Defendants IRIS, C.H. Robinson and KV Load's breach of these duties were the direct and proximate cause of the severe physical injuries and emotional distress suffered by Mr. Kraus, as described herein, which were reasonable foreseeable.  As a result of the severe injuries

16

and emotional distress suffered by Mr. Krauss caused by Defendants' negligence, Mr. Krauss has endured significant and continuing pain and suffering and has incurred significant medical expenses, where were reasonably foreseeable.

85.     Defendants IRIS, C.H. Robinson and KV Load's breach of these duties were the direct and proximate cause of property damage to the goods as described herein, which were reasonably foreseeable.

86.     Defendants IRIS, C.H. Robinson and KV Load's breach of these duties were the direct and proximate cause of property damage caused to Mr. Krauss' forklift and damages for the loss of use of the fork lift, which were reasonably foreseeable.

87.     Defendants IRIS, C.H. Robinson and KV Load's breach of these duties were the direct and proximate cause of the lost profits and loss of business opportunities suffered by Fight Back which were reasonably foreseeable due to the loss of the damaged, defective and shorted LEGO which have significant commercial value.

88.     Plaintiffs have also incurred storage costs since delivery to keep the goods secure.

90.     Defendants IRIS, C.H. Robinson and KV Load's conduct as alleged herein was outrageous, intentional, malicious and/or conducted with reckless indifference to the rights of Plaintiffs, thereby justifying an award of punitive damages to be imposed against each Defendant individually.

## COUNT II

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

91.     The allegations of paragraphs 1 through 90 are incorporated herein by reference with the same force and effect as if set forth in full below.

17

92.     Defendants IRIS, C.H. Robinson and KV Load individually and through their agents, employees and/or joint venturers owed a duty of reasonable care to Plaintiffs to properly inspect, load, secure, transport and deliver the shipment of LEGO baseplates to Plaintiffs in a safe and reasonable manner, to protect Fight Back's agents and/or volunteers from the risk of physical harm, to protect Fight Back's agents and/or volunteers' property from the risk of physical harm, to warn Fight Back's agents and/or volunteers' property regarding the risk of physical harm, to comply with the manufacturer's shipping instructions and/or recommendations, to comply with the agreements between Fight Back and IRIS, to inspect the goods and prior to shipment to ensure they were free from defect or damage and to comply with Federal Motor Carrier Safety Regulations.

93.     Defendants IRIS, C.H. Robinson and KV Load also had a duty to take reasonable precautions in the hiring, retention and supervision of their employees, agents and independent contractors to protect Plaintiffs' personnel and property from the risk of harm.

94.     Defendants IRIS, C.H. Robinson and KV Load knew or through the exercise of reasonable care, should have known, that victims of serious personal injury are likely to suffer emotional distress, including but not limited to: depression, irritability, anger, loss of memory and concentration abilities, mood swings, anxiety/edginess, sexual dysfunction, changes in eating patterns and hostility.

95.     Defendants IRIS, C.H. Robinson and KV Load breached this duty by failing to properly inspect, load, secure, transport and deliver the shipment of LEGO baseplates to Fight Back in a safe and reasonable manner, by failing to ensure that no dangerous condition would be created by the loading, securing, transporting and delivering of the goods, by failing to prevent or minimize the risk of physical harm or injury to Fight Back's agents and/or volunteers, by failing

18

to warn Fight Back's agents and/or volunteers regarding the risk of physical harm or injury, to by

failing to comply with the manufacturer's shipping instructions and/or recommendations, by

failing to comply with the agreements between Fight Back and IRIS, by failing to inspect the

goods prior to shipment to ensure they were free from defect or damage, by failing to comply

with Federal Motor Carrier Safety Regulations and by failing to take reasonable precautions in

the hiring, retention and supervision of their employees, agents and independent contractors to

protect Plaintiffs' personnel and property from the risk of harm.

   96. Defendants IRIS, C.H. Robinson and KV Load's breach of these duties were the

direct and proximate cause of the severe physical injuries and emotional distress suffered by Mr.

Kraus, as described herein, which were reasonable foreseeable.  As a result of the severe injuries

and emotional distress suffered by Mr. Krauss caused by Defendants' negligence, Mr. Kraus has

endured significant and continuing pain and suffering and has incurred significant medical

expenses, where were reasonably foreseeable.  Specifically, Mr. Krauss has suffered from severe

emotional distress as a result of the accident. Mr. Krauss' symptoms include, but are not limited

to: depression, irritability, anger, loss of memory and concentration abilities, mood swings,

anxiety/edginess, sexual dysfunction, changes in eating patterns, hostility, feeling ineffective and

increased impulsive behaviors and arguments with loved ones.  The loss of Mr. Krauss's

mobility to be able to walk distances or to walk up steps has been especially devastating to him.

   97. In addition, Mr. Krauss has had to pay for replacement services such as

contractors to do work he did before the accident.

   98. Defendants IRIS, C.H. Robinson and KV Load's conduct as alleged herein was

outrageous, intentional, malicious and/or conducted with reckless indifference to the rights of

19

Plaintiffs, thereby justifying an award of punitive damages to be imposed against each Defendant individually.

## COUNT III

### BREACH OF CONTRACT

99.     The allegations of paragraphs 1 through 98 are incorporated herein by reference with the same force and effect as if set forth in full below.

100.    In February of 2015, Fight Back and IRIS, with the approval of LEGO, entered into an agreement regarding the sale of 153,117 LEGO baseplates held by IRIS to be sold to Fight Back in exchange for $153,117.00 in addition to $2,250.00 for the shipping of the goods to Fight Back, a total of $155,367.00.

101.    Pursuant to the parties' agreement, shipping would be handled by Mr. Conrad at IRIS and would be done pursuant to the pallet diagram for the LEGO baseplates as designed by IRIS by packing the boxes of LEGO baseplates on thirty 40" x 48" pallets containing 40 boxes on each pallet, leaving only 24 boxes to be distributed among the thirty pallets or be double stacked on a 31st pallet. Thirty 40" x 48" pallets fit on the floor area of a 53 ft. trailer.

102.    Fight Back delivered a cashier's check to IRIS on or around February 12, 2015 in the amount of $155,367.00.

103.    IRIS breached its agreement(s) with Fight Back by, among other things:

    a.      failing to deliver all 153,117 LEGO baseplates to Fight Back as agreed;

    b.      failing to deliver the LEGO baseplates to Fight Back free from defect or damage;

    c.      negligently, carelessly and recklessly damaging approximately 9,000 LEGO baseplates during delivery;

20

d.  delivering more than 96,000 LEGO baseplates that were defective or were damaged during shipment; including the baseplates from IRIS' Texas warehouse which were carelessly thrown into plastic boxes without packing material or cushioning which caused them to dent and crack during shipment;

e.  shorting the order by 875 LEGO baseplates (7 boxes);

f.  failing to inspect, load, secure and transport the LEGO baseplates to Fight Back as agreed between the parties;

g.  failing to properly inspect, load, secure and transport the LEGO baseplates to Fight Back pursuant to industry standards and according to Federal and State law and regulations;

h.  failing to follow Mr. Conrad's instructions for shipping;

i.  by loading and shipping the order in Mr. Conrad's absence;

j.  failing to pack the LEGO baseplates pursuant to IRIS's own pallet diagram onto 40" x 48" pallets and instead shipping goods on smaller and defective Euro pallets;

k.  failing to avoid double stacking of the pallets as agreed;

l.  failing to use a significant portion of the 53 ft. trailer area, for which Fight Back negotiated and paid for and IRIS agreed to use;

m.  failing to accurately count the product prior to shipment;

n.  by retaining Fight Back's payment for the goods and/or shipment and failing to reimburse Fight Back for defective, damaged and shorted product; and

21

o.      by failing to reimburse Fight Back for costs incurred due to IRIS'
significant and material breach of this agreement.

104.    IRIS hired C.H. Robinson, a freight broker, to handle shipping of the order. C.H.
Robinson and/or IRIS then retained the services of KV Load, Inc., a freight shipping and
trucking company, to pick up the shipment from IRIS in Pleasant Prairie, Wisconsin and to
deliver the order to Fight Back at the Public Storage facility in Newtown Square, Pennsylvania.

105.    IRIS, C.H. Robinson and KV Load, were each under contract to deliver the goods
to Fight Back free from defect or damage and had each had an obligation to Fight Back to ensure
the quantity of the goods were correct.

106.    C.H. Robinsons and KV Load breached its agreements with IRIS and Fight Back,
by among other things:

        a.      failing to deliver all 153,117 LEGO baseplates to Fight Back as agreed;

        b.      failing to deliver the LEGO baseplates to Fight Back free from defect or
damage;

        c.      negligently, carelessly and recklessly damaging approximately 9,000
LEGO baseplates during delivery;

        d.      delivering more than 96,000 LEGO baseplates that were defective or were
damaged during shipment; including the baseplates from IRIS's Texas
warehouse which were carelessly thrown into plastic boxes without
packing material or cushioning which caused them to dent and crack
during shipment;

        e.      failing to discover that the order was short by 875 LEGO baseplates (7
boxes);

22

    f.  failing to inspect, load, secure and transport the LEGO baseplates to Fight

       Back as agreed between the parties; and

    g.  failing to properly inspect, load, secure and transport the LEGO baseplates

       to Fight Back pursuant to industry standards and according to Federal and

       State law and regulations;

  107. As a direct and proximate cause of Defendants IRIS, C.H. Robinson and KV

Load's breach of the agreements(s) Fight Back has suffered and will continue to suffer,

significant financial harm. Such harm includes, but is not limited to, past and future lost profits

and loss of business opportunities suffered by Fight Back which were reasonably foreseeable due

to the loss of the damaged, defective and shorted LEGO baseplates which have significant

commercial value.

  108. Fight Back has suffered consequential damages as a result of Defendants IRIS,

C.H. Robinson and KV Load's conduct as alleged herein. Such consequential damages have

included, among other things, the loss of business opportunities which were reasonably

foreseeable when the agreement(s) was/were entered into.

  109. Defendant IRIS has breached the covenant of good faith and fair dealing inherent

in the parties' agreement by engaging in the conduct alleged herein.

  110. As a direct and proximate result of result of Defendant IRIS, C.H. Robinson and

KV Load's conduct as alleged herein, Fight Back has suffered, and will continue to suffer,

additional harm for which it has no adequate remedy at law.

  111. As a direct and proximate result of Defendant IRIS, C.H. Robinson and KV

Load's conduct as alleged herein, Fight Back has been denied the benefit of the bargain inherent

in the parties' agreement(s).

## PRAYER

WHEREFORE, Plaintiffs Donald J. Krauss, Cindy G. Brillman, Fight Back d/b/a Fightback for Autism, JC Rehab, Inc. and CGB Rehab, Inc., pray that judgment be entered in their favor and against Defendants IRIS USA, Inc., KV Load, Inc. and C.H. Robinson Worldwide, Inc., jointly and severally as follows:

a.  awarding actual and compensatory damages;

b.  awarding punitive damages, where appropriate;

c.  awarding interest, costs of suit, and such other and further relief to which they may be justly entitled.

## DEMAND FOR JURY

Plaintiffs hereby demand a trial by jury on all such issues triable thereto.

February 17, 2017

Respectfully submitted,

By:     /s/ David G. Concannon

David G. Concannon (DGC 2089)
david@davidconcannon.com
Matthew T. Charles
matt@davidconcannon.com
**CONCANNON & CHARLES**
200 Eagle Road, Suite 116
Wayne, Pennsylvania 19087
(610) 293-8084 Telephone
(610) 293-8086 Facsimile

*Counsel for Plaintiffs Donald J. Krauss, Cindy G. Brillman, Fight Back, Inc. d/b/a Fightback for Autism, JC Rehab, Inc. and CGB Rehab, Inc.*

24

## CERTIFICATE OF SERVICE

I certify that true and correct copies of this document were served upon the following by

by U.S. Certified Mail, return receipt requested, on the date below:

**IRIS USA, Inc.**
c/o C T Corporation System
8020 Excelsior Dr., Suite 200
Madison, Wisconsin 53717

**KV Load, Inc.**
c/o Svitlana Bazavlyak
721 East Madison Street, Unit 101G
Villa Park, Illinois 60181

**C.H. Robinson Worldwide, Inc.**
Corporation Service Company
2711 Centerville Road
Wilmington, Delaware 19808

DATED:  February 17, 2017                    */s/ David G. Concannon*
                                             David G. Concannon

25

JS 44 (Rev. 07/16)

# CIVIL COVER SHEET

17-CV-778

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Donald J. Krauss, Cindy G. Brillman, Fight Back, Inc. d/b/a Fightback for Autism, JC Rehab, Inc. and CGB Rehab, Inc.

## DEFENDANTS

IRIS USA, Inc., KV Load, Inc. and C.H. Robinson Worldwide, Inc.

**(b)** County of Residence of First Listed Plaintiff    Delaware, PA

*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Kenosha, WI

*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

CONCANNON & CHARLES
200 Eagle Road, Suite 116, Wayne, PA 19087
Phone: (610) 293-8084

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Relations | ☐ 864 SSID Title XVI | Exchange |
| ☐ 195 Contract Product Liability | ☒ 360 Other Personal | Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | Leave Act | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332

Brief description of cause:
Personal injury based on negligence, negligent infliction of emotional distress and breach of contract.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ greater than $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE    02/17/2017

SIGNATURE OF ATTORNEY OF RECORD    /s/ David G. Concannon

David G. Concannon    FEB 17 2017

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 409 Wyntre Lea Drive, Bryn Mawr, PA 19010        Plaintiff Donald J. Krauss

Address of Defendant:   IRIS USA, Inc., 1111 80th Ave., Pleasant Prairie, WI 53158        (please see attached sheet for additional parties.)

Place of Accident, Incident or Transaction:  Newtown Square, Pennsylvania.
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))        Yes☐  No☒

Does this case involve multidistrict litigation possibilities?        Yes☐  No☒
*RELATED CASE, IF ANY:*
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
        Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
        Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
        Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
        Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
      (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☒ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
      (Please specify) _____

**ARBITRATION CERTIFICATION**
*(Check Appropriate Category)*

I, David G. Concannon _____ , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 02/17/2017 _____        David G. Concannon
                                                          David G. Concannon          DGC 2089
                                                          Attorney-at-Law            Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 02/17/2017 _____        David G. Concannon, LICEB 17 2017          DGC 2089
                                                          Attorney-at-Law            Attorney I.D.#

CIV. 609 (5/2012)

Party Addresses (continued):

Plaintiff Cindy G. Brillman
409 Wyntre Lea Drive
Bryn Mawr, Pennsylvania 19010

Fight Back, Inc. d/b/a Fightback for Autism
1117 East Putnam Avenue, Suite 215
Riverside, Connecticut 06878

Plaintiff JC Rehab, Inc.
409 Wyntre Lea Drive
Bryn Mawr, Pennsylvania 19010

Plaintiff JC Rehab, Inc.
409 Wyntre Lea Drive
Bryn Mawr, Pennsylvania 19010

Defendant KV Load, Inc.
684 S. Barrington Road, Unit 113
Streamwood, Illinois 60107

C.H. Robinson Worldwide, Inc.
14701 Charlson Road
Eden Prairie, Minnesota 55347-5076



**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

### CASE MANAGEMENT TRACK DESIGNATION FORM

| Donald J. Krauss, et al. | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| IRIS USA, Inc., et al. | : | **1 7**NO.    **0 7 7 8** |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (x )

| 02/17/2017 | David G. Concannon | Plaintiffs |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 610-293-8084 | 610-293-8086 | david@davidconcannon.com |

| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02    FEB 17 2017