# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD J. KRAUSS et al., | : | |
| *Plaintiffs*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| IRIS USA, INC. et al., | : | No. 17-778 |
| *Defendants*. | : | |

## MEMORANDUM

PRATTER, J.                                                                                       NOVEMBER 20, 2017

### INTRODUCTION

The procedural posture of this case is already complicated, but the alleged facts are not. An autism charity in Pennsylvania contracted to buy Legos from a seller in Wisconsin. The seller hired a freight broker, who in turn hired a shipper to deliver the Legos. But, according to the charity buyers, the seller and shipper failed to load the Legos in the safe manner that the charity had requested. Instead, they used old pallets of the wrong size and dangerously stacked the pallets on top of each other. The shoddy loading damaged the Legos in transit and caused a pallet to crack during unloading, injuring a volunteer for the charity.

Now, the Court must rule on (1) a motion to dismiss the first amended complaint, (2) a motion to strike the second amended complaint, and (3) a motion for leave to file a second amended complaint.

The Court exercises its discretion to grant the plaintiffs leave to file their second amended complaint, which moots the motion to strike in the process. As to the merits of the motion to dismiss, the state-law claims against defendant KV Load are preempted by the federal Carmack

1

Amendment.  Finally, for the sake of clarity, the Court grants the plaintiffs leave to file a third amended complaint consistent with this opinion and accompanying order.

FACTS

**A.  The Parties**

The plaintiffs are a cluster of charities (Fight Back, JC Rehab, and CGB Rehab), the charities' President and CEO (Cindy G. Brillman), and a volunteer for Fight Back (Donald J. Krauss).  Collectively, the plaintiffs help autistic people secure medical services.

The defendants are IRIS, a Wisconsin corporation that manufactures and distributes plastic storage products (for immediate purposes, Lego baseplates); C.H. Robinson Worldwide, a Delaware freight broker hired by IRIS to coordinate the Lego shipment to one of the plaintiff charities; and KV Load, a shipper from Illinois that C.H. Robinson hired to deliver IRIS's shipment of Legos to the charity.

**B.  The Main Charity-Plaintiff Contracts to Buy Legos from IRIS**

The main charity-plaintiff in this case is Fight Back (short for "Fightback for Autism"). In early 2015, Fight Back's CEO, Ms. Brillman, contracted with IRIS to buy a shipment of Lego baseplates, which are plastic platforms for building with Lego blocks.  Lego baseplates are stored and shipped on pallets, and the purchase agreement contained two specifications about the shipment:

1. *Pallet Size:* IRIS would use larger (40" x 48") pallets, not the smaller "European style" (31" x 47") pallets that Legos are usually shipped on.
2. *Pallet Stacking:* IRIS would ensure that the pallets were not double-stacked in the trailer during the trip from Wisconsin to Pennsylvania.

2

### C. The Delivery Reveals Sloppy Loading

IRIS hired C.H. Robinson, a freight broker, to handle shipping the Legos. In turn, C.H. Robinson hired KV Load, a shipping company, to pick up the Legos in Wisconsin and deliver them to Fight Back in Pennsylvania. KV Load picked up the shipment from IRIS on February 19, 2015, and arrived at Fight Back's headquarters in Pennsylvania the next day.

From the start, there were problems with the shipment. The Legos were stacked on European-style pallets, not the larger pallets specified in the contract. These particular European-style pallets were substandard; in some, the wood was deteriorating. The pallets were also double-stacked in contravention of the agreement. Many pallets had shifted during the trip; some of the top-stacked pallets were hanging precariously over the edges of the bottom pallets. Lastly, the total load in the trailer was not properly balanced over the truck axles, increasing the risk that they could shift and crack in transit. In short, IRIS, C.H. Robinson, and KV Load had delivered a dangerous configuration of faulty pallets.

### D. An Accident While Unloading

The KV Load driver unloaded the Lego shipment with the help of Donald J. Krauss, a Fight Back volunteer. According to the complaint, the KV Load driver failed to inspect the double-stacked pallets to ensure that they were configured in a structurally sound manner. Instead, the driver and Mr. Krauss developed a system in which the driver would move the double-stacked pallets from the front of the trailer to the rear of the trailer where Mr. Krauss, operating the forklift, picked them up. One double-stacked pallet, perched precariously on the edge of the trailer, collapsed and fell on top of Mr. Krauss. Crushed under thousands of pounds of pallet and Legos, Mr. Krauss suffered severe injuries.

### E. The Plaintiffs' Alleged Injuries

According to the complaint, some baseplates were damaged in transit and others damaged during the accident. Taking the damage in transit together with the damage from the accident, the complaint alleges: (1) emotional and physical injuries to Mr. Krauss as a result of the accident; (2) property damage to the baseplates and to the forklift Mr. Krauss was using during the accident; and (3) economic losses stemming from the damaged Legos.

## PROCEDURAL HISTORY

The three charities, Ms. Brillman, and Mr. Krauss filed a complaint against IRIS (the seller), C.H. Robinson (the freight broker), and KV Load (the shipper).

After an initial motion to dismiss, the plaintiffs filed an amended complaint. The first amended complaint was met with another motion to dismiss from KV Load. Instead of responding to the motion to dismiss the amended complaint, the plaintiffs filed a second amended complaint. Both the first and second amended complaints advance five counts against the defendants:

1. Negligence against IRIS and C.H. Robinson;
2. Negligent infliction of emotional distress against all defendants;
3. Breach of contract against IRIS and C.H. Robinson;
4. Federal Carmack Amendment violations against KV Load; and
5. Negligence against KV Load.

KV Load moved to strike the second amended complaint. The plaintiffs responded with a new motion for leave to file the (already-filed) second amended complaint.

Thus the briefing now follows three parallel tracks: (1) the motion to strike the second amended complaint, (2) the motion for leave to file the second amended complaint, and (3) the motion to dismiss. The Court held oral arguments on all three motions.

**DISCUSSION**

As explained below, the Court first grants the plaintiffs' motion for leave to file a second amended complaint and therefore moots KV Load's motion to strike. Second, the Court concludes that Mr. Krauss's personal injury claims against KV Load are preempted by the Carmack Amendment. Third, the Court addresses ancillary arguments that KV Load agreed to withdraw at oral argument. Fourth, the Court summarizes which claims remain in the case.

**A. KV Load's Motion to Strike and the Plaintiffs' Motion for Leave**

The Court grants the plaintiffs' motion for leave to file a second amended complaint and moots KV Load's motion to strike.

By the plain text of Federal Rule of Civil Procedure 15(a)(2), the plaintiffs needed to get the Court's (or the defendants') permission to file the second amended complaint. *See* Fed. R. Civ. P. 15(a)(2) ("[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."). KV Load's motion to strike is correct about that. But granting leave is within the Court's discretion, and Rule 15(a)(2) instructs the Court to "freely give leave when justice so requires." Like the plaintiffs, the Court does not perceive how the second amended complaint causes any undue delay, bad faith, dilatory motives, futility of amendments, or prejudice to the parties. *See Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000).

KV Load argues that allowing another round of briefing would not move the ball forward. It points out the ways in which the second amended complaint failed to address the

shortcomings identified in KV Load's motion to dismiss the first amended complaint. If the Court grants leave to file the second amended complaint, then KV Load will simply rehash its Carmack preemption arguments in another motion to dismiss, and the parties "will be right back before the Court." Resp. to Mot. Strike, at 2; *see also Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988) ("[I]f the amendment will not cure [any] deficiency in the original complaint or if the amended complaint cannot withstand a motion to dismiss").

The second amended complaint certainly leaves some issues unresolved — Carmack Amendment preemption chief among them, as addressed below. But it also resolves many ancillary issues. For instance, the plaintiffs have dropped their punitive damages claim. They have specified the consequential damages flowing from Mr. Krauss's accident. And at oral argument, counsel for the plaintiffs conceded that the count for breach of contract is not directed at KV Load, despite the second amended complaint's casual wording.

KV Load argues that the Carmack Amendment preemption question is ripe for review and will resolve almost all of the claims against KV Load. Because the Carmack preemption question has indeed been fully briefed, the Court will construe the Carmack arguments to apply to the state-law claims in the second amended complaint.

**B. Carmack Preemption**

The only remaining major dispute between KV Load and the plaintiffs is the issue of Carmack Amendment preemption. This question has already been well ventilated in the parties' briefings. Accordingly, the Court will construe the parties' arguments about Carmack preemption as to the first amended complaint to apply to the second amended complaint as well.

*1. Standard of Review*

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation and internal quotation marks omitted).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994). Also, the Court must accept as true all reasonable inferences emanating from the allegations, and view those facts and inferences in the light most favorable to the nonmoving party. *See Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010).

That admonition does not demand that the Court ignore or even discount reality. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

*2. Background on Carmack Preemption*

The Carmack Amendment to the Interstate Commerce Commission Termination Act provides:

> A carrier providing transportation or service . . . shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property . . . are liable to the person entitled to recover under the receipt or bill of lading. *The liability imposed under this paragraph is for the actual loss or injury to the property* caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported . . . .

49 U.S.C. § 14706(a)(1) (emphasis added). In other words, a motor carrier is liable for damage or loss to cargo, and the liability is the actual loss or injury to the property.

The purpose of the Carmack Amendment was national uniformity in the liability assigned to interstate carriers. In the bad old days, carriers were "subjected to such a diversity of legislative and judicial holding that it was practically impossible for a shipper engaged in a business that extended beyond the confines of his own state . . . to know, without considerable investigation and trouble, and even then oftentimes with but little certainty, what would be the carrier's actual responsibility as to goods delivered to it for transportation from one state to another." *Adams Express Co. v. Croninger*, 226 U.S. 491, 505 (1913).

Faced with this problem, Congress "struck a compromise between shippers and carriers." *Certain Underwriters at Interest at Lloyd's of London v. UPS of Am., Inc.*, 762 F.3d 332, 335 (3d Cir. 2014). Carriers became "strictly liable for damage to or loss of goods." *Id.* In return, Congress instituted a "uniform, nationwide scheme of liability, with damages limited to actual loss." *Id.* "Now, under the Carmack Amendment, both parties know what to expect when a carrier damages a shipper's goods." *Hubbard v. All States Relocation Serv. Inc.*, 114 F. Supp. 2d 1374, 1378 (S.D. Fla. 2000).

The Carmack Amendment achieves uniformity and predictability by preempting state laws related to carrier liability. Among other activity, the Amendment covers "services relating to [the movement of property], including arranging for, receipt, delivery, elevation, transfer in transit, . . . storage, handling, packing, [and] unpacking." 49 U.S.C. § 13102(23)(B). Over one hundred years ago, the Supreme Court recognized that the Amendment regulates the details of interstate carrier liability "so completely that there can be no rational doubt that Congress intended to take possession of the subject, and supersede all state regulation with reference to it." *Adams Express*, 226 U.S. at 505–06. Ever since, courts have consistently held that the Carmack Amendment preempts state law claims for damage to interstate shipments, such as negligence, breach of contract, and state consumer protection laws. *See, e.g.*, *Lewis v. Atlas Van Lines*, 542 F.3d 403, 407–08 (3d Cir. 2008).

3. *Limits of Carmack Preemption*

This case presents a fact pattern located on the very edge of the preemption mosaic. After all, the plaintiffs' state law claims against KV Load are not for damage to the *cargo*. If they were (indeed, as they were in the initial complaint), then this would be an open-and-shut case of preemption. Instead, the plaintiffs' state law claims against KV Load allege *personal injuries* to Mr. Krauss (and the downstream economic effects of those injuries). Nevertheless, are these claims also preempted by the Carmack Amendment?

The Circuits' Courts of Appeals appear to be split on how to analyze the effect of the Carmack Amendment on a personal injury claim arising out of an interstate shipment. Several courts follow the "conduct" theory of Carmack preemption. Under this theory, the only claims that escape preemption are those "based on *conduct* separate and distinct from the delivery, loss

of, or damage to goods." *Smith v. United Parcel Serv.*, 296 F.3d 1244, 1248–49 (11th Cir. 2002) (emphasis added).

Other courts follow the "harm" theory of preemption. According to these courts, a personal injury claim is not preempted when the plaintiff alleges "separate and independently actionable *harms* that are distinct from the loss of, or the damage to, the goods." *Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 289 (7th Cir. 1997) (emphasis added); *see also Rini v. United Van Lines, Inc*., 104 F.3d 502, 506 (1st Cir. 1997) ("[A] claim for intentional infliction of emotional distress alleges a *harm* . . . that is independent from the loss or damage to goods and . . . would not be preempted.") (emphasis added).[1]

Though the parties do not use the terms "conduct" and "harm" theories, they argue from these basic positions. Channeling the harm theory, the plaintiffs argue that Mr. Krauss's claims are not preempted because they are for personal injuries to Mr. Krauss — claims "separate and distinct from the loss of, or damage to, goods." Resp. to Mot. Dismiss, at 5. KV Load counters by arguing that the Carmack Amendment covers all of its conduct: "The Carmack Amendment applies to all harms caused while the goods were under the shipper's control." Mot. Dismiss, at 5. In other words, because the accident "happened during delivery of the Lego boxes," the state law claims are preempted. Reply in Support Mot. Dismiss, at 6.

No surprise, then, that the Court's decision as to the correct theory determines whether the Carmack Amendment preempts Mr. Krauss's state-law claims. Under the conduct theory, the claims are preempted. KV Load's conduct that injured Mr. Krauss — carelessly loading the pallets, carelessly leaving a double-stacked pallet dangling off the edge of the trailer — was part and parcel with its conduct that damaged the Legos. Every step of the way, KV Load's conduct

---

[1] For a thorough discussion of the two theories, see *White v. Mayflower Transit, L.L.C*., 543 F.3d 581, 585–86 (9th Cir. 2008).

was covered by the Carmack Amendment. Plaintiffs' counsel admitted as much at oral argument.

Under the harm theory, on the other hand, Mr. Krauss's injuries are separate and distinct from the damage to the Legos. He seeks recompense for his physical and emotional injuries, not for damage the Legos. According to the harm theory, Mr. Krauss's claims would survive preemption.

Guidance from the Third Circuit Court of Appeals on this question has been sparse. The Court of Appeals' most recent pronouncement came in a footnote in 2014:

> Courts of Appeals have identified a peripheral set of state and common law causes of action that are not preempted by the Carmack Amendment. *See, e.g.*, . . . *White v. Mayflower Transit, L.L.C.*, 543 F.3d 581, 585–86 (9th Cir. 2008) (holding that claims based on *conduct* apart from the delay, loss, or damage to shipped property would not be preempted); *Gordon*, 130 F.3d at 289 (holding that claims based on *harms* apart from the delay, loss, or damage to shipped property are not preempted). The claims that the Underwriters bring [here] do not fall within this set. They seek only to recover for the loss of their goods — claims that lie at the heart of Carmack preemption.

*Certain Underwriters*, 762 F.3d at 336 n.4 (emphasis in original). In other words, the court recognized the conduct/harm split, but it did not endorse either approach.[2]

4. *The Case for the Conduct Theory*

The Court adopts the conduct theory and rules that the state law claims against KV Load are preempted. This conclusion is bolstered by (1) the text of the Carmack Amendment, (2) the capacious language in early Supreme Court cases interpreting the Amendment, (3) the

---

[2]  At oral argument, both sides tried to claim *Certain Underwriters* as an ally. But in the war between the conduct theory and the harm theory, *Certain Underwriters* is determinedly Swiss.

11

underlying purposes of the Amendment, and (4) consistent rulings by district courts within the Third Circuit.

First, by its own terms, the Amendment regulates services such as "arranging for, receipt, delivery, elevation, transfer in transit . . . storage, handling, packing, [and] unpacking" of cargo. 49 U.S.C. § 13102(23)(B). In other words, the statute governs the *conduct* that goes into moving goods from one state to another.

Second, the Supreme Court has held that the Carmack Amendment is "comprehensive enough to embrace *all damages* resulting from *any failure* to discharge a carrier's duty with respect to any part of the transportation to the agreed destination." *New York, Phila. & Norfolk R.R. Co. v. Peninsula Produce Exch. of Md.*, 240 U.S. 34, 38 (1916) (emphasis added). Although this language is over a century old, it is not a dead letter; the Ninth Circuit Court of Appeals recently concluded that "a rule focusing on harm to the exclusion of conduct would contradict" this expansive Supreme Court statement. *See White*, 543 F.3d at 585–86.

Third, the conduct theory best advances the Carmack Amendment's goals of national uniformity and predictability in carrier liability. For example, the Fifth Circuit Court of Appeals explained that allowing claims for negligent and intentional infliction of emotional distress "could only lead to the morass [of state law claims] that existed before the Carmack Amendment." *Moffit v. Bekins Van Lines Co.*, 6 F.3d 305, 307 (5th Cir. 1993).

Fourth, at least three district courts within the Third Circuit have either applied the conduct theory or issued rulings consistent with it. In *Mallory v. Allied Van Lines, Inc.*, No. 02-cv-7800, 2003 WL 22391296 (E.D. Pa. Oct. 20, 2003), the plaintiff sued a carrier for emotional distress after the carrier lost the plaintiff's Gucci sunglasses. *Id.* at *1. The court held that the claim was preempted because the plaintiff did not allege that the carrier "engaged in *conduct* . . .

sufficiently distinct from the contract of carriage." *Id.* at *4 (quoting *Gordon*, 130 F.3d at 290) (emphasis added). The emotional injury claim arose "solely from the loss of her goods." *Id.* Thus, *Mallory* seems to have applied the conduct theory.

In the next case, *Jones v. USA Express Moving*, No. 08-cv-0880 (E.D. Pa. June 27, 2008), a woman hired a moving company to move her belongings into her new home. The moving company refused to unload the belongings until it was paid. This standoff lasted for 8 months, when the woman sued the moving company for breach of contract and conversion.

Judge Brody held that the woman's claims were preempted. She explained that intentional torts that are "inextricably intertwined" with an underlying property loss are preempted. *Id.* at 6. She emphasized that "[t]he principle underlying this broad preemption is predictability." *Id.* at 3. Though she also stated that "applicability of the Carmack Amendment is determined solely by reference to the *harm* caused while the goods were under the shipper's control," *id.* at 5 (emphasis added), that statement was meant to distinguish a rule that focused on the carrier's *state of mind* — not on the carrier's *conduct*.

To be fair, *Jones* could be shoehorned into either theory. The "inextricably intertwined" language is consistent with conduct theory cases. But even under the harm theory, the court reached the correct conclusion. After all, the plaintiff alleged only harms to property (breach of contract and conversion), not personal injury.

Finally, looking outside this district, a case from the Middle District of Pennsylvania that appears to have applied the conduct theory. In *Strike v. Atlas Van Lines, Inc.*, 102 F. Supp. 2d 599 (M.D. Pa. 2000), gasoline spilled onto the plaintiff's property during shipment. Upon delivery, the fumes overwhelmed the plaintiff, who required medical attention, and who eventually sued the carrier for a personal-injury negligence claim. The court held that the

13

Carmack Amendment preempted the personal injury claim because the plaintiff's injuries were "suffered as the result of changes made to shipped goods through negligence of the carrier." *Id.* at 600. In other words, the same carrier conduct that damaged the cargo injured the plaintiff.[3]

5. *Carmack Conclusion*

In this case, KV Load's conduct was allegedly substandard: The cargo was loaded improperly, damaged in transit, and damaged during the unloading process. KV Load's conduct that damaged the cargo completely becomes the conduct that injured Mr. Krauss. The state law claims against KV Load are therefore dismissed as preempted.[4]

**C. Ancillary Arguments**

KV Load raised two arguments in its briefing that it withdrew at oral argument.

First, KV Load had argued that the economic loss doctrine bars the plaintiffs' breach of contract claim against KV Load. At oral argument, plaintiffs' counsel conceded that plaintiffs had no breach of contract claim against KV Load. This argument is therefore moot as abandoned.

---

[3] The plaintiffs rely on a Wisconsin case with almost identical facts to those presented here. In *McGinn v. JB Hunt Transport*, the plaintiff was injured when goods that had been improperly loaded into a trailer fell out of the trailer onto the plaintiff. The court held that the plaintiff's state-law claims were not preempted on the ground that the injury was "separate and distinct from the loss of, or damage to, goods that were shipped in interstate commerce," even though the injury had "some association with the transfer of goods." *McGinn v. JB Hunt Transp., Inc.*, No. 10-cv-610, 2012 WL 124401, at *3 (E.D. Wis., Jan. 17, 2012) (quoting *Gordon*, 130 F.3d at 289). However, *McGinn* was controlled by a Seventh Circuit Court of Appeals case that had already adopted the harm theory. *See Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 289 (7th Cir. 1997). This circuit, on the other hand, has seen no such binding pronouncement.

[4] The Court notes that even though Mr. Krauss's state-law claims against KV Load are preempted, his claims against the other defendants survive. *See* Second Am. Compl. ¶ 85 ("Defendants IRIS and C.H. Robinson's breach of these duties were the direct and proximate cause of the severe physical injuries and emotional distress suffered by Mr. Krauss, as discussed herein, which were reasonably foreseeable.").

Second, KV Load had argued that the plaintiffs had waited too long to KV Load's motion to dismiss. At oral argument, however, counsel for KV Load withdrew this argument.

### D. Remaining Issues in a Third Amended Complaint

The litigation will be best served if plaintiffs file a third amended complaint to clarify the counts against KV Load in light of this opinion and accompanying order. Specifically:

1. Count 1 of the second amended complaint (negligence against IRIS and C.H. Robinson) remains unchanged by this ruling.

2. Count 2 of the second amended complaint (negligent infliction of emotional distress against all defendants) now omits KV Load.

3. Count 3 of the second amended complaint (breach of contract against IRIS and C.H. Robinson) now omits KV Load.

4. Count 4 of the second amended complaint (Carmack Amendment claim against KV Load) remains unchanged by this ruling.

5. Count 5 of the second amended complaint (negligence against KV Load) has been entirely dismissed.

## Conclusion

For the foregoing reasons, the Court grants the plaintiffs' motion for leave to file the second amended complaint and dismisses as moot defendant KV Load's motion to strike the second amended complaint.

The Court construes the arguments about Carmack Amendment preemption in defendant KV Load's motion to dismiss the first amended complaint to apply to the second amended complaint, and the Court grants KV Load's motion to dismiss.

An appropriate order follows.

BY THE COURT:

 /s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE