IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD J. KRAUSS et al.,    :  | | |
|            *Plaintiffs*,    :  | | CIVIL ACTION |
|                             :  | | |
|           v.                :  | | |
|                             :  | | |
| IRIS USA, INC. et al.,      :  | | No. 17-778 |
|            *Defendants*.    :  | | |

**MEMORANDUM**

PRATTER, J.                                                                                          MAY 3, 2018

### INTRODUCTION

These motions to dismiss and for summary judgment in this interstate shipping case present questions of federal preemption and litigation management. On both scores, the Court draws mixed conclusions.

As to preemption: the Court concludes that the Federal Aviation Administration Authorization Act preempts personal injury claims against defendant C.H. Robinson, the freight broker in this case. But the Court also concludes that defendant IRIS, the seller of goods that caused the injury in this case, cannot find solace or sanctuary in FAAAA preemption.

As to litigation management: the Court concludes that a contract claim against the broker should survive, notwithstanding a partial stipulation of dismissal. The Court further concludes that several plaintiffs, originally included in the lawsuit "out of an abundance of caution," do not belong in the case because they were not privy to any contract and because their alleged damages are duplicative of the main plaintiffs'.

1

## BACKGROUND

**Facts.** Fightback for Autism, a charity in Pennsylvania, contracted to buy a mass quantity of Legos from IRIS, a seller in Wisconsin. IRIS hired a freight broker, C.H. Robinson, which in turn hired a carrier, KV Load, to deliver the Legos. But the seller (IRIS) and carrier (KV Load) did not load the Legos in the safe arrangement that the charity had requested. Instead, they used old pallets of the wrong size, dangerously stacking the pallets on top of one another. The shoddy loading damaged the Legos in transit and caused a pallet to crack during unloading, which injured a volunteer for the charity and damaged his forklift as well.[1]

**Parties.** The plaintiffs are a cluster of charities (Fightback, JC Rehab, and CGB Rehab), the charities' President and CEO (Cindy G. Brillman), and the injured volunteer (Donald J. Krauss). The defendants are IRIS, the seller of the Lego baseplates; C.H. Robinson, the freight broker; and KV Load, the shipper.

**Prior Opinion.** Last year, the Court granted the partial motion to dismiss of the carrier KV Load on the ground that the common law claims were preempted by the Carmack Amendment to the federal interstate shipping law. *See Krauss v. IRIS USA, Inc.*, No. 17-778, 2017 WL 5624951 (E.D. Pa. Nov. 22, 2017). The Carmack Amendment limits a carrier's liability to the "actual loss or injury" of the goods in transit, *see* 49 U.S.C. § 14706(a)(1), meaning that the carrier, KV Load, was not liable for common-law claims for Mr. Krauss's personal injuries or for the damage to the forklift. The parties then settled their remaining claims against KV Load, who has been dismissed from the case.

---

[1] A more detailed recitation of the facts is included in *Krauss v. IRIS USA, Inc.*, No. 17-778, 2017 WL 5624951, at \*1–\*2 (E.D. Pa. Nov. 22, 2017).

2

**Counts in the Current Complaint.** In the latest iteration of the complaint, the five plaintiffs bring three counts against the remaining two defendants — Lego seller IRIS and freight broker C.H. Robinson. The counts against each defendant are:

1. Negligence. (As against the freight broker, C.H. Robinson, this count is specifically for negligent *hiring* of the carrier, KV Load.)
2. Negligent Infliction of Emotional Distress.
3. Breach of Contract.

Now, broker C.H. Robinson has filed a motion to dismiss and seller IRIS has filed a motion for summary judgment. For the reasons that follow, the Court grants in part and denies in part both motions.

## ANALYSIS OF C.H. ROBINSON'S MOTION TO DISMISS

After recounting the standard of review, the Court grants in part and denies in part C.H. Robinson's motion to dismiss. First, the Federal Aviation Administration Authorization Act preempts claims for personal injuries brought against C.H. Robinson. Second, the contract claim against C.H. Robinson survives because Fightback for Autism was a third-party beneficiary of Robinson's contract with IRIS and KV Load.

### I. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is]

sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation and internal quotation marks omitted).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994). Also, the Court must accept as true all reasonable inferences emanating from the allegations, and view those facts and inferences in the light most favorable to the nonmoving party. *See Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010).

That admonition does not demand that the Court ignore or even discount reality. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

**II.   The FAAAA preempts personal injury claims against C.H. Robinson.**

In this case, the remaining claims are not for damage to the Legos. Instead, they are for injuries to Mr. Krauss and for damage to the forklift. C.H. Robinson (the freight broker) argues that these latter claims are preempted by the Federal Aviation Administration Authorization Act, 49 U.S.C. § 14501.

After summarizing the framework and general scope of FAAAA preemption, the Court concludes that the FAAAA preempts Mr. Krauss's personal injury claim against C.H. Robinson.

## A. FAAAA Preemption – Framework

The preemption provision of the FAAAA provides that no state may:

> enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1).

The FAAAA's preemption provision was modeled on similar language in the Airline Deregulation Act of 1978, which had already been interpreted by the Supreme Court in *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992). *See Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 368 (2008). The ADA's preemption provision bars state laws "related to a price, route, or service of an air carrier that may provide air transportation. *See* 49 U.S.C. § 41713(b)(1). For purposes of statutory interpretation, "when judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its judicial interpretations as well." *Rowe*, 552 U.S. at 370 (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,* 547 U.S. 71, 85 (2006)). Because the Congress that passed the FAAAA preemption provision was "fully aware" of the Supreme Court's reading of the ADA when it "copied" the ADA's language, the Court has held that the two provisions should be interpreted similarly. *Id.*

The purpose of both statutes was to "promote 'efficiency, innovation, and low prices' through 'maximum reliance on competitive market forces.'" *Thompson v. U.S. Airways, Inc.*, 717 F. Supp. 2d 468, 474 (E.D. Pa. 2010) (quoting *Morales*, 504 U.S. at 378). The preemption provisions were included to "ensure that the States would not undo federal deregulation with regulation of their own." *Morales,* 504 U.S. at 378; *see also Rowe*, 552 U.S. at 367–68. As the Supreme Court put the matter in *Rowe*, the "overarching goal" of the FAAAA was to avoid a

5

haphazard "patchwork of state service-determining laws, rules, and regulations." *Rowe*, 552 U.S. at 371, 373. In sum, "[t]he purpose of the FAAAA preemption was to free interstate shipping from a patchwork of state laws and regulations and to replace those rules with 'competitive market forces.'" *Georgia Nut Co. v. C.H. Robinson Co.*, No. 17-3018, 2017 WL 4864857, at *3 (N.D. Ill. Oct. 26, 2017) (quoting *Rowe*, 552 U.S. at 371).

Given this preemptive purpose, the rule laid down by the Supreme Court is that the FAAAA preempts state laws "having a connection with or reference to" carrier rates, routes, and services. *See Morales*, 504 U.S. at 384. "Such a connection exists," for present purposes, "where it has a forbidden significant effect" on rates, routes, or services. *Thompson*, 717 F. Supp. 2d at 475; *see also Rowe*, 552 U.S. at 375; *Gary v. Air Grp., Inc.*, 397 F.3d 183, 186 (3d Cir. 2005); *Adams v. U.S. Airways Grp., Inc.*, 978 F. Supp. 2d 485, 492 (E.D. Pa. 2013). The effect can be felt "directly or indirectly." *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013); *see also Nationwide Freight Sys., Inc. v. Ill. Commerce Comm'n*, 784 F.3d 367, 373 (7th Cir. 2015); *Georgia Nut Co.*, 2017 WL 4864857, at *3. But the effect must not be too "tenuous, remote, or peripheral." *Pelkey*, 569 U.S. at 261 (quoting *Rowe*, 552 U.S. at 371); *see also Morales,* 504 U.S. at 390; *Thompson*, 717 F. Supp. 2d at 475.

### B. FAAAA Preemption – General Scope

The foregoing having been said, the preemptive scope of the FAAAA is "broad." *Thompson*, 717 F. Supp. 2d at 475. A state law is preempted even if it is "consistent" with the federal statute's "substantive requirements." *Morales,* 504 U.S. at 387 (quoting *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 829 (1988)).

"At the same time, the breadth of the words 'related to' does not mean the sky is the limit." *Dan's City Used Cars, Inc.*, 569 U.S. at 260. For example, a state-law "prohibition on smoking in certain public places" that happened to affect truck drivers would not be preempted.

6

*Rowe*, 552 U.S. at 375. Likewise, generally applicable state laws against gambling, prostitution, and "obscene depictions" would present too "tenuous" a connection to rates, routes, and services. *See Morales*, 504 U.S. at 390.

Common law rules do fall under the scope of the FAAAA. *See, e.g.*, *Thompson*, 717 F. Supp. 2d at 475 ("Pennsylvania common law is considered an 'other provision having the force and effect of law.'"); *see also Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (en banc) ("Laws of general applicability, even those consistent with federal law, are preempted if they have the 'forbidden significant effect' on rates, routes or services."); *Travel All Over The World v. Saudi Arabia,* 73 F.3d 1423 (7th Cir. 1996); *Harris v. American Airlines, Inc.,* 55 F.3d 1472 (9th Cir. 1995); *Alpine Fresh, Inc. v. Jala Trucking Corp.*, 181 F. Supp. 3d 250, 257 (D.N.J. 2016) ("State common law qualifies as an 'other provision having the force and effect of law.'") (quoting *Ameriswiss Tech., LLC v. Midway Line of Illinois, Inc.*, 888 F. Supp. 2d 197, 204 n.6 (D.N.H. 2012)); *Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc.*, 972 F. Supp. 665, 672 (N.D. Ga. 1997) ("[A] state law tort action against a carrier, where the subject matter of the action is related to the carrier's prices, routes, or services, is a state enforcement action having a connection with or reference to a price, route, or service of any motor carrier.").

In particular, the FAAAA preempts negligent hiring or retention claims brought against freight brokers if the claims are "related to" the broker's "price, route, or service." *See, e.g.*, *Georgia Nut Co. v. C.H. Robinson Co.*, No. 17-3018, 2017 WL 4864857, at *3 (N.D. Ill. Oct. 26, 2017) ("Common-law negligent hiring and negligent supervision claims do not expressly reference freight broker services; however, they do have a significant economic effect on those services."); *Alpine Fresh, Inc. v. Jala Trucking Corp.*, 181 F. Supp. 3d 250, 257 (D.N.J. 2016); *Ameriswiss Tech., LLC v. Midway Line of Illinois, Inc.*, 888 F. Supp. 2d 197, 205–06 (D.N.H.

7

2012). Thus, the claim against freight broker C.H. Robinson does not escape preemption simply by being a claim for negligent hiring.

### C. *The personal injury claim against C.H. Robinson is preempted by the FAAAA.*

The parties have already resolved claims related to the damaged Legos — the goods sold by IRIS, brokered for shipment by C.H. Robinson, and delivered by KV Load. C.H. Robinson's current preemption argument raises a murkier question: whether the FAAAA preempts not only negligent hiring claims for damage to *goods*, but also claims for *personal injuries*. In this case, Mr. Krauss suffered personal injuries and Fightback's forklift was damaged, both occurring as the parties unloaded the Legos.

The case law on this question is sparse. No federal appellate court "has addressed whether a personal injury claim against a broker based on negligent hiring is preempted." *Mann v. C.H. Robinson Worldwide, Inc.*, No. 7:16-CV-102, 2017 WL 3191516, at *6 (W.D. Va. July 27, 2017). At least four district courts have weighed in. Three have concluded that claims for personal injuries are not preempted by the FAAAA. *See Mann*, 2017 WL 3191516, at *8 (concluding that a claim for negligent hiring based on injuries sustained in a truck accident was not preempted); *Montes de Oca v. El Paso-Los Angeles Limo. Express, Inc.*, No. 14-cv-9230, 2015 WL 1250139 (C.D. Cal. Mar. 17, 2015); *Owens v. Anthony*, No. 2:11-cv-33, 2011 WL 6056409, at *3 (M.D. Tenn. Dec. 6, 2011). One has concluded that claims for personal injuries are preempted. *See Volkova v. C.H. Robinson Co.*, No. 16-1883, 2018 WL 741441, at *1–2 (N.D. Ill. Feb. 7, 2018) (claim from personal injury sustained in truck accident was preempted).

The Court concludes that it is more true to persuasive precedential and common-sense analysis to hold that the claim for personal injuries arising out of the shipment in this case is preempted. As explained above, the FAAAA preempts state laws "related to" a "service" of any broker "with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). Transportation

is defined to include "services related to" the "movement of passengers or property," including "arranging for" the movement. *Id.* § 13102(23). This statutory text means that the FAAAA preempts state laws "having a connection with, or reference to" carrier rates, routes, and services. *Rowe*, 552 U.S. at 371 (quoting *Morales*, 504 U.S. at 384). "Such a connection exists," for present purposes, "where it has a forbidden significant effect" on rates, routes, or services. *Thompson*, 717 F. Supp. 2d at 475; *see also Rowe*, 552 U.S. at 375. This analysis is fact-specific. *See, e.g.*, *Adams*, 978 F. Supp. 2d at 493 ("[W]e will look at the facts underlying Plaintiffs' causes of action to determine whether enforcement of the state claim would have an impermissible effect on Defendants' price, routes or services.").

**Mr. Krauss's personal injury claim relates to C.H. Robinson's core service.** Here, the negligent hiring claim against C.H. Robinson is that Mr. Krauss's injuries directly flowed from C.H. Robinson's failure to vet freight carrier KV Load. The claim therefore "relate[s] to the core service provided by Robinson — hiring motor carriers to transport shipments." *Volkova*, 2018 WL 741441, at *3. As an allegation that C.H. Robinson failed to perform its "primary service," the claim "directly implicates" how the broker "performs its central function of hiring motor carriers" and will therefore "have a significant economic impact" on C.H. Robinson's services. *Id.*

The allegations, in short, go to the core of what it means to be a careful broker. Or, as a court in Vermont put the issue, they go to "the heart of the services" that C.H. Robinson provides. *See Rockwell v. United Parcel Serv., Inc.*, No. 2:99-CV-57, 1999 WL 33100089, at *2 (D. Vt. July 7, 1999) (quotations omitted). In essence, the plaintiffs allege that C.H. Robinson should have used a "heightened and elaborate" process of selecting carriers. *Id.* at *3. Such a heightened process, of course, would "necessarily impact directly upon [C.H. Robinson's]

9

services and pricing." *Id.*; *cf. Muzzarelli v. United Parcel Serv. Inc.*, No. 15-CV-01169, 2017 WL 2786456, at *6 (C.D. Ill. June 27, 2017) (concluding that a personal injury claim against UPS based on "placing a package in front of the door versus not in front of the door" was "too tenuously related" to UPS's "routes, rates, and services to be preempted by the FAAAA"). Given that the claim relates to C.H. Robinson's core service as a broker, the Court concludes that it is preempted.

Furthermore, any attempt to distinguish between claims for damage to the Legos and claims for injuries to Mr. Krauss is not tenable. Both claims arise from, and target, the same core "service" of C.H. Robinson: selecting a carrier. To paraphrase the Court's prior opinion, the allegedly subpar service "that damaged the cargo" is the same subpar service "that injured Mr. Krauss." *Krauss v. IRIS USA, Inc.*, No. 17-cv-778, 2017 WL 5624951, at *7 (E.D. Pa. Nov. 22, 2017). If a claim for damage to the cargo is preempted as encroaching too closely upon C.H. Robinson's core service, then a claim for Mr. Krauss's injuries must be preempted as well.

**Personal injury cases in the airline context reinforce this result.** The close relationship between Mr. Krauss's allegations (that C.H. Robinson carelessly selected carrier KV Load) and C.H. Robinson's core service (carefully selecting freight brokers) sets this case apart from cases holding that personal injury claims of airline passengers are not preempted. For instance, in *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334 (5th Cir. 1995) (en banc), a case of rum fell from an overhead compartment and injured an airline passenger. The Fifth Circuit Court of Appeals held that the passenger's negligence claim was not preempted because the claim did not relate to the airline's services. *Id.* at 340. The court concluded that holding Delta liable for the allegedly careless decision to allow another passenger to stow the case of rum in the overhead compartment would not "significantly affect Delta's services" — the services of transporting

10

passengers and cargo from one city to another. *Id.* Here, by contrast, the careless selection of a carrier is far closer to the core service of a freight broker than a flight crew's carelessness regarding overhead storage is to the core services of an airline.

Closer to home, the Third Circuit Court of Appeals has held that a negligence claim for physical injuries sustained when a passenger "fell while disembarking from an airplane" was not preempted. *See Elassaad v. Independence Air, Inc.*, 613 F.3d 119, 121 (3d Cir. 2010). The court concluded that the "field of aviation safety" did not include "a flight crew's oversight of the disembarkation of passengers once a plane has come to a complete stop at its destination." *Id.* Once again, a flight crew's carelessness regarding disembarkation bears a more tenuous connection to the core services of an airline than the connection of the selection of a freight carrier to the core service of a freight broker. Indeed, carefully selecting a freight carrier is not simply "close" to C.H. Robinson's core service. It *is* the core service.

In this instance, moreover, the scope of the preemption provisions of the FAAAA and ADA may actually diverge. As explained above, the FAAAA's and ADA's preemption provisions are nearly identical and earn substantially the same interpretations. The Supreme Court has alluded, in *dicta*, that the ADA does not preempt "personal injury claims relating to airline operations." *See Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 231 n.7 (1995). But it premised this reading on another provision of the ADA that "requires an air carrier to have insurance . . . to cover claims for personal injuries and property losses." *Id.*; *see also Taj Mahal Travel, Inc.*, 164 F.3d at 194 ("[T]he continued existence of statutorily mandated liability insurance coverage is strong evidence that Congress did not intend to preempt state tort claims."). That insurance mandate relates only to injury or loss "resulting from the operation or maintenance of the aircraft." 49 U.S.C. § 41112(a). In other words, this airline-specific

11

insurance provision is one of the few ways in which the statutory text could be read to distinguish FAAAA preemption for freight brokers from ADA preemption for airlines.

**Mr. Krauss's lack of remedy against C.H. Robinson does not change the calculus.** The Court is mindful that, in its opinion concluding that Mr. Krauss's claims against carrier KV Load were preempted, the Court stated that "even though Mr. Krauss's state-law claims against KV Load are preempted, his claims against the other defendants survive." *Krauss v. IRIS USA, Inc.*, No. 17-cv-778, 2017 WL 5624951, at *7 n.4 (E.D. Pa. Nov. 22, 2017). Now, his claim against C.H. Robinson is preempted as well, leaving only his claim against IRIS.

This lack of remedy, although not dispositive, may be evidence of Congress's intent not to preempt claims for personal injuries. "It is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured." *Silkwood v. Kerr-McGee Corp.,* 464 U.S. 238, 251 (1984); *see also Taj Mahal Travel, Inc.*, 164 F.3d at 194 ("It is highly unlikely that Congress intended to deprive passengers of their common law rights to recover for death or personal injuries sustained in air crashes."). District courts concluding that personal injury claims are not preempted have followed this reasoning. *E.g.*, *Mann*, 2017 WL 3191516, at *8; *Montes*, 2015 WL 1250139, at *1.

But a plaintiff's "lack of remedy . . . does not create a defense to federal pre-emption." *Weir v. Nw. Nat. Life Ins. Co.*, 796 F. Supp. 846, 849 (E.D. Pa. 1992). Recently, a federal court in Illinois was unmoved by the plaintiff's seeming lack of a remedy: although it "recognize[d] the devastation caused by the accident" and "certainly sympathize[d]" with the plaintiff, it concluded that it was bound by the Supreme Court's decision in *Rowe* — regardless of how "dangerous" the defendant's conduct or "the importance of the public health objective." *Volkova*, 2018 WL 741441, at *4 (quoting *Rowe*, 552 U.S. at 374). The court further observed

12

that the plaintiff "may and has sought recourse" against the carrier and driver in the case. *Id.* Likewise, Mr. Krauss has sought recourse against IRIS, and, per the Court's conclusion below, still retains a viable claim against IRIS.

**The Court's ruling does not grant freight brokers sweeping immunity from personal injury claims.** The Court is mindful that "the breadth of the words 'related to' does not mean the sky is the limit," *see Dan's City Used Cars, Inc.*, 569 U.S. at 260, and takes to heart the instruction not to develop "broad rules concerning whether certain types of common-law claims are preempted by the FAAAA," *see Volkova*, 2018 WL 741441, at *2 (quoting *Travel All Over the World*, 73 F.3d at 1431). Consistent with those exhortations, the Court emphasizes that its ruling "turn[s] on the underlying facts of the specific cause[] of action." *See Mann*, 2017 WL 3191516, at *7 (citing *Smith v. Comair, Inc.*, 134 F.3d 254, 259 (4th Cir. 1998)). Thus, the Court's ruling is narrow: in the particular circumstances of this case, because Mr. Krauss's personal injury claim targets the core service of broker C.H. Robinson, it is preempted.

### III. The contract claim against C.H. Robinson survives because Fightback was a third-party beneficiary of Robinson's contract with IRIS and KV Load.

C.H. Robinson argues that the claim for breach of contract should be dismissed because Robinson had no contract with the plaintiffs. The plaintiffs counter that the bill of lading named Fightback for Autism as the recipient of the Lego delivery, which makes Fightback a third-party beneficiary of any contract between broker C.H. Robinson, seller IRIS, and carrier KV Load.

A party is a third-party beneficiary to a contract where all parties to the contract "express an intention to benefit the third party in the contract." *Scarpitti v. Weborg*, 609 A.2d 147, 150 (Pa. 1992). Because the bill of lading names Fightback as the recipient of the goods, Fightback qualifies as a third-party beneficiary.

C.H. Robinson's best case is distinguishable. *See Robbins Motor Transp., Inc. v. Translink, Inc.*, No. 07-CV-150, 2009 WL 803711 (E.D. Pa. Mar. 26, 2009). There, the court held that a carrier was not a third-party beneficiary of a sales contract between a buyer and seller. *Id.* at *9. Here, by contrast, a buyer seeks to benefit from a shipping contract between a broker and a carrier.

The court in *Robbins* rested its holding on the observation that "[a]ny contract for the manufacture of goods that requires transportation of those goods will create incidental beneficiaries in the form of transportation companies." *Id.* As the court explained, more was needed "to transform one of those potential incidental beneficiaries into an intended third-party beneficiary." *Id.* No such slippery-slope threatens this case: when C.H. Robinson contracted with KV Load to ship the Legos, Fightback was an intended beneficiary, expressly named in the bill of lading.

But no other plaintiff was named in the bill of lading, so no other plaintiff can make a case for third-party beneficiary status. Indeed, the complaint alleges that *only* Fightback was a third-party beneficiary. *See* Third Am. Compl. ¶¶ 103–104. Thus, the Court will dismiss the contract claims of Ms. Brillman, Mr. Krauss, JC Rehab, and CGB Rehab as against C.H. Robinson. Only Fightback's contract claim against C.H. Robinson survives.

## ANALYSIS OF IRIS'S MOTION FOR SUMMARY JUDGMENT

After recounting the standard of review, the Court turns to the four main questions presented by IRIS's motion for summary judgment. First, the Court excuses IRIS's lateness in filing its motion. Second, the Court concludes that IRIS cannot benefit from Carmack or FAAAA preemption because IRIS is neither a carrier nor a broker. Third, notwithstanding a partial stipulation, the Court finds that Fightback for Autism still has a claim against IRIS.

Finally, the plaintiffs other than Fightback and Mr. Krauss have no independent claims. Therefore, the Court grants in part and denies in part IRIS's motion.

## I. Standard of Review

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility for informing the Court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the

15

materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c).

Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## II. IRIS's lateness in filing its motion is excusable.

The deadline for filing dispositive motions was February 12, 2018. At a status conference on March 12, 2018, counsel for IRIS explained that his client wished to file a motion for summary judgment. The Court urged IRIS to file its motion by March 19, 2018, which it did.

When a deadline has already passed, the Court may retroactively extend it for "good cause" when a party has filed a motion showing "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). To access this rule, "a party must make a formal motion for extension of time and the district court must make a finding of excusable neglect." *Drippe v. Tobelinski*, 604 F.3d 778, 785 (3d Cir. 2010). In evaluating whether "excusable neglect" exists, the court must consider "all relevant circumstances surrounding the party's omission," including:

1) The "danger of prejudice";

2) The "length of the delay and its potential impact on judicial proceedings";

3) The "reason for the delay, including whether it was within the reasonable control of the movant"; and

4) "[W]hether the movant acted in good faith."

*Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 395 (1993).

In this case, the Court probed IRIS's reasons for delaying and ultimately urged IRIS to file the motion by March 19. At oral argument, counsel for the plaintiffs conceded that the delayed filing caused no prejudice. All told, these circumstances excuse (but the Court does not

intend to routinely indulge) IRIS's late submission.  The Court will therefore reach the merits of IRIS's motion.

**III. Because IRIS is neither a carrier nor a broker, it cannot benefit from either preemption statute.**

The gist of the claims against IRIS is that IRIS improperly stacked the Lego baseplates when loading the truck for delivery to Fightback.  IRIS now argues that these claims are preempted by either the Carmack Amendment or the FAAAA.

In essence, IRIS seeks to piggyback on the arguments advanced by KV Load (already dismissed from the case on Carmack preemption grounds) and C.H. Robinson (partially dismissed on FAAAA preemption grounds).  But because IRIS is neither a carrier nor a broker, it cannot benefit from either preemption statute.

*A. The Carmack Amendment does not apply to IRIS.*

The Carmack Amendment preempts only claims brought against carriers and freight brokers.  The statute limits liability to losses "caused by (A) the receiving *carrier*, (B) the delivering *carrier*, or (C) another *carrier* over whose line or route the property is transported." 49 U.S.C. § 14706(a)(1) (emphasis added).  "Carrier," in turn, is defined as "a motor carrier, a water carrier, and a freight forwarder." *Id.* § 13102(3).  A "motor carrier" is "a person providing motor vehicle transportation for compensation." *Id.* § 13102(14).

IRIS manufactures and sells storage products.  It is not a motor carrier or freight broker registered with the Department of Transportation.  It does not "provid[e] motor vehicle transportation for compensation."  Indeed, it hired C.H. Robinson and KV Load to do just that. On the bill of lading, it was designated as the shipper — not as the broker or the carrier. Therefore, IRIS cannot claim the protection of the Carmack Amendment.

Nonetheless, IRIS argues that it should receive Carmack Amendment protection because it helped to stack the pallets of Legos at the beginning of their journey. But IRIS does not explain how this volunteer or gratuitous activity renders it a "carrier." Nor does IRIS confront the implications of this argument: If IRIS becomes a "carrier" just because it helped to pack up KV Load's truck, then any vendor who puts a package in a box before sending it across state lines would qualify as a "carrier" as well.

### B. *The FAAAA does not apply to IRIS.*

For similar reasons, IRIS cannot benefit from FAAAA preemption. The preemption provision of the FAAAA applies to state laws that relate to "motor carrier[s]," "broker[s]" and "freight forwarders." 49 U.S.C.A. § 14501(c)(1).

"Motor carrier" is defined above, *see id.* § 13102(14), and IRIS does not fit the bill. Similarly, a "freight forwarder" is "a person holding itself out to the general public . . . to provide transportation of property for compensation." *Id.* § 13102(8). IRIS does not provide transportation of property for compensation.

The term "broker" means a person who "sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." *Id.* § 13102(2). IRIS hired C.H. Robinson to do these tasks on its behalf. IRIS itself was not a "broker."

### IV. Fightback still has a claim against IRIS.

IRIS argues that Fightback no longer has any claims in the case based on a stipulation filed in January. *See* Doc. No. 57. The stipulation does provide that Fightback has been compensated for the damage to the Legos. But the stipulation also states that the parties did not come to an agreement on the costs of storing the damaged Legos and shipping them back to IRIS. These latter costs amount to roughly $10,000. Thus, Fightback still has skin in the game.

## V. The plaintiffs other than Fightback and Mr. Krauss have no claims.

IRIS argues that the remaining plaintiffs — Ms. Brillman, CGB Rehab, and JC Rehab — have no standing to assert any claims because their injuries were not proximately caused by the defendants.

"[T]he proximate-cause requirement generally bars suits for alleged harm that is too remote from the defendant's unlawful conduct. That is ordinarily the case if the harm is purely derivative of misfortunes visited upon a third person by the defendant's acts." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1390 (2014) (quotations omitted).

The main sources of damages are (1) contract damages based on the broken Legos, (2) Mr. Krauss's medical expenses, and (3) costs of storing the damaged Legos. One would expect these damages to be claimed by Mr. Krauss (who suffered physical injuries) and by Fightback (which agreed to purchase the Legos). Yet, in the third amended complaint, the *other* plaintiffs have asserted claims over portions of these damages.

At oral argument, the Court asked the parties for their view on the best way to ensure that all of the personal injury and contract damages are accounted for, with no risk of duplicative recoveries. After oral argument, the plaintiffs resolved this issue: the three ancillary plaintiffs (Ms. Brillman, JC Rehab, and CGB Rehab) have assigned any claims over the Legos to Fightback, and any claims over Mr. Krauss's medical expenses to Mr. Krauss. These plaintiffs have not retained any claims.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part both C.H. Robinson's motion to dismiss and IRIS's motion for summary judgment.

An appropriate order follows.

BY THE COURT:

<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE