# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD J. KRAUSS *et al.*, | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| IRIS USA, INC. *et al.*, | : | No. 17-778 |
| Defendants. | : | |

## MEMORANDUM

PRATTER, J.                                                                                                            JULY 31, 2018

In this motion for reconsideration, the Court must evaluate whether newly discovered evidence warrants review of its prior ruling that a state tort claim against a freight broker was preempted by a federal shipping statute. Because the alleged new evidence does not change the Court's conclusion that the state tort claim would have a significant effect on the broker's services, the Court denies the motion for reconsideration.

### BACKGROUND

Fightback for Autism, a charity in Pennsylvania, contracted to buy Legos from IRIS, a seller in Wisconsin. IRIS hired a freight broker, C.H. Robinson, which in turn hired a carrier, KV Load, to deliver the Legos. But the seller (IRIS) and carrier (KV Load) did not load the Legos in the safe manner that the charity had requested. Instead, they used old pallets of the wrong size, and they dangerously stacked the pallets one on top of another. The shoddy loading damaged the Legos in transit and caused a pallet to crack during delivery, injuring a volunteer for the charity and damaging a forklift.

The plaintiffs are a cluster of charities (Fightback, JC Rehab, and CGB Rehab), the charities' President and CEO (Cindy G. Brillman), and the injured volunteer (Donald J. Krauss).

Originally, the defendants were IRIS, the seller of the Lego baseplates; C.H. Robinson, the freight broker; and KV Load, the shipper. KV Load was dismissed from the case late last year.

In the latest iteration of the complaint, the plaintiffs bring three counts against IRIS and C.H. Robinson. The counts sound in both tort and contract. In May 2018, the Court held that Mr. Krauss's personal-injury claim against C.H. Robinson was preempted by the Federal Aviation Administration Authorization Act, 49 U.S.C. § 14501, *et seq*. *See* Memorandum & Order, Doc. Nos. 88 & 89. The plaintiffs have filed a motion for reconsideration of that ruling on the basis of what they describe as newly discovered evidence.

## DISCUSSION

Under the FAAAA, a state law is preempted if it has a "significant economic effect" on a broker's rates, routes, or services. Memorandum, Doc. No. 88, at 7 (quoting *Georgia Nut Co. v. C.H. Robinson Co.*, No. 17-3018, 2017 WL 4864857, at *3 (N.D. Ill. Oct. 26, 2017)). In this case, Mr. Krauss alleged that C.H. Robinson had carelessly selected KV Load as the freight carrier. The gravamen of Mr. Krauss's claim was that C.H. Robinson's quality-control process in selecting a risky carrier like KV Load was insufficient; a more "heightened and elaborate" process was needed. *Id.* at 9 (quoting *Rockwell v. United Parcel Serv., Inc.*, No. 2:99-CV-57, 1999 WL 33100089, at *3 (D. Vt. July 7, 1999)). In May 2018, Court held that this claim was preempted because it went "to the core of what it means to be a careful broker" and would therefore have a significant effect on C.H. Robinson's services. *Id.*

In the preemption opinion, the Court noted that the inquiry was "fact-specific" and couched its "narrow" ruling "in the particular circumstances of this case." Memorandum, Doc. No. 88, at 9, 13. Seizing on this language, the plaintiffs now argue that evidence discovered after briefing and oral argument undercuts the Court's decision on preemption. Citing this new

evidence, the plaintiffs have filed a motion for reconsideration. *See Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (explaining that one ground for reconsideration is "the availability of new evidence").

The supposed new evidence falls into three categories: (1) KV Load's participation in a special carrier program offered by C.H. Robinson; (2) a notation on the website of the Federal Motor Carrier Safety Administration; and (3) other general evidence of KV Load's riskiness. Because the evidence is simply not as groundbreaking as the plaintiffs would have the Court believe, the Court denies the motion for reconsideration.

### I. C.H. Robinson's Carrier Management Program

The first category of new evidence is a notation about KV Load in C.H. Robinson's internal computer system that was entered ten days before the accident:

> **2/9/2015: NO CARRIER MANAGEMENT – From branch rep WARRCHR for ROYFALE, "Please remove this carrier from PCM," Removed, Marked DNA**

The plaintiffs argue that this notation demonstrates that C.H. Robinson's extant processes were sophisticated enough to flag KV Load as a problematic carrier. In other words, no "heightened" process would be needed to avoid this kind of accident in the future. As a result, this argument goes, a tort claim against C.H. Robinson would have no "significant economic effect" on C.H. Robinson's services, so the claim would not be preempted.

In its response to the motion, C.H. Robinson explains that nothing in the notation bears on KV Load's safety or performance:

- "<u>NO CARRIER MANAGEMENT</u>" means that KV Load opted out of a program that C.H. Robinson offers to carriers who wish to be contacted by only one C.H. Robinson office, as opposed to every office nationwide. In other words, KV Load elected to accept

3

- shipments from C.H. Robinson offices nationwide, rather than only one office.
- "PCM" stands for "priority carrier managed" and is part of the carrier management program that KV Load opted out of.
- "DNA" stands for "do not apply." This notation tells workers at C.H. Robinson not to apply KV Load toward the optional carrier management program.

The Court is satisfied that this "newly discovered" evidence is certainly not the bombshell that the plaintiffs initially thought and does not change the Court's initial conclusion on preemption.

**II.  Federal Motor Carrier Safety Administration**

The next category of evidence purportedly supports the plaintiffs' theory that C.H. Robinson should have known that KV Load was a risky carrier. Evidently, C.H. Robinson's regular practice is to scour the website of the Federal Motor Carrier Safety Administration (FMCSA) to see if carriers have been charged with safety violations. Roughly two weeks before the accident at issue here, FMCSA recorded safety violations by KV Load. Relatedly, the plaintiffs argue that C.H. Robinson should have received information about KV Load's riskiness from a private subscription service for freight brokers.

Even if both pieces of evidence are new, it does not appear that C.H. Robinson was aware of the safety violations by KV Load, despite C.H. Robinson's efforts to search the FMCSA website for data of such violations. Thus, the Court's conclusion in its preemption opinion is still correct: C.H. Robinson would have needed a heightened process to discover KV Load's

latest safety violations, meaning that a tort claim against C.H. Robinson would significantly affect the broker's services and would still be preempted.

**III.    Other Evidence of KV Load's Riskiness**

Finally, the plaintiffs present new evidence that C.H. Robinson knew that KV Load was not an overly conscientious shipper. In particular, KV Load made several late deliveries in 2014 — in one instance, because a driver overslept. It may well be, as a matter of state negligence law, that evidence of such infractions should have precluded a hyper-careful freight broker from hiring KV Load again. But that very conclusion goes "to the core of what it means to be a careful broker" and would therefore have a significant effect on C.H. Robinson's services. Doc. No. 88, at 9. The Court's prior conclusion that the state tort claim is preempted remains unchanged.

## CONCLUSION

For the foregoing reasons, the Court denies the plaintiffs' motion for reconsideration. An appropriate order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE