**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DONALD J. KRAUSS et al.,** | : | |
| *Plaintiffs*, | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **IRIS USA, INC. et al.,** | : | **No. 17-778** |
| *Defendants*. | : | |

## <u>M E M O R A N D U M</u>

PRATTER, J.                                                                                    MAY 24, 2019

This negligence and breach of contract case is no child's play. It arises out of (i) a contract between Fightback and IRIS USA, Inc. for the purchase of a large shipment of LEGO baseplates[1]; (ii) the resulting shipment and delivery by C.H. Robinson and its agent KV Load; and (iii) injuries suffered by Donald J. Krauss, a volunteer at Fightback, when the pallets holding the LEGO baseplates collapsed and fell on Mr. Krauss during the unloading process. KV Load and C.H. Robinson settled with the plaintiffs and are no longer parties to the case.

There are five motions pending before the Court.[2] The Court will:

(1) Deny IRIS' *Daubert* motion because IRIS filed this motion eight months after the deadline and has not made a showing of excusable neglect;

(2) Grant in part and deny in part IRIS' motion to preclude evidence of damages allegedly sustained by Ms. Brillman, JC Rehab, and CGB Rehab;

---

[1]     Fightback is a non-profit dedicated to assisting individuals with autism. One of their fundraising mechanisms is selling LEGO products.

[2]     IRIS also filed a motion to preclude evidence concerning Mr. Krauss' negligent infliction of emotional distress claim, arguing that Mr. Krauss is not entitled to pursue such a claim because any damages associated with it would duplicate those for his standard negligence claim. During oral argument, the plaintiffs' counsel agreed to give up Mr. Krauss' negligent infliction of emotional distress claim and to pursue any damages relating to his emotional distress through his negligence claim. Thus, this motion to preclude is moot.

(3) Grant in part and deny in part IRIS' motion to preclude evidence related to Mr. Krauss' alleged injuries;

(4) Grant IRIS' motion to preclude evidence concerning Mr. Krauss' loss of income from his inability to harvest trees because such damages are too speculative; and

(5) Grant Mr. Krauss' motion to preclude evidence concerning Mr. Krauss' 1995 criminal conviction because Mr. Krauss' 24-year-old conviction is neither relevant to this case nor admissible under Federal Rule of Evidence 609(b).

The facts of this case were set forth at length in the Court's Memorandum addressing a previous motion to dismiss and will not be recounted here. *See* November 22, 2017 Memorandum, at 2–4. The Court addresses the pending motions in the order listed above.

## DISCUSSION

### I. **IRIS' *Daubert* Motion**

IRIS seeks to preclude presentation by the plaintiffs' logistics expert, Ronald D. Grossman. Mr. Grossman, who has over 40 years of experience in warehousing and distribution, shipping, transportation, and global supply chain activities, submitted a report stating that IRIS failed to meet the standard of care by, among other things, using EURO pallets (as opposed to American Pallets) and double-stacking the pallets. IRIS argues that Mr. Grossman's testimony should be precluded because his opinions are not based on a scientific methodology, he does not define the standard of care, and he offers legal conclusions. Because IRIS' *Daubert* motion is eight months late, and IRIS did not make any showing of excusable neglect, the Court denies this motion as untimely.

Even when a deadline has passed, the Court may retroactively extend it for good cause when a party has filed a motion showing excusable neglect. FED. R. CIV. P. 6(b)(1)(B). To access this rule, "a party must make a formal motion for extension of time and the district court must make a finding of excusable neglect." *Drippe v. Tobelinski*, 604 F.3d 778, 785 (3d Cir. 2010). In

evaluating whether "excusable neglect" exists, the Court must consider "all relevant circumstances surrounding the party's omission," including: (1) the danger of prejudice; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

Pursuant to the Court's Second Amended Scheduling Order, any *Daubert* motion needed to be filed by February 12, 2018. IRIS did not so. Instead, on October 26, 2018, over eight months after the *Daubert* motion deadline, IRIS filed a *Daubert* motion thinly disguised as a motion *in limine*. IRIS did not file a motion for extension of time showing excusable neglect. When the Court called counsel to task on this point during oral argument, IRIS' counsel conceded that he has "no basis for excusable neglect." Absent any effort to show excusable neglect, the Court cannot accept IRIS' untimely *Daubert* motion. *See Drippe*, 604 F.3d at 784–85 ("'[T]here is no discretion to grant a post-deadline extension absent a motion and showing of excusable neglect.'") (quoting *Jones v. Cent. Bank*, 161 F.3d 311, 314 n.2 (5th Cir. 1998)). Therefore, the Court denies IRIS' *Daubert* motion as untimely.[3]

---

[3]     In response to IRIS' *Daubert* motion, the plaintiffs submitted a revised expert report from Mr. Grossman, clarifying the standard of care applicable to his report and removing any references to the term "negligence." Mr. Grossman did not change his conclusions or offer new theories of causation.

    IRIS argues that if the Court precludes IRIS from filing its late *Daubert* motion, it should also preclude the plaintiffs from using Mr. Grossman's revised expert report at trial. However, the standard governing the exclusion of untimely expert reports differs from the standard governing untimely motions. Although the latter focuses on excusable neglect, the former focuses primarily on prejudice. *See Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) ("In determining whether a district court abused its discretion [in excluding an untimely expert report], we consider: (1) the prejudice or surprise in fact of the party against whom the excluded [report would have been used], (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or other cases of the court, and (4) bad faith or willfulness in failing to comply with the district court's order."). *Footnote continues on next page.*

II.  **IRIS' Motion to Preclude Evidence of Damages Allegedly Sustained by Ms. Brillman, JC Rehab, and CGB Rehab**

IRIS also moves to preclude the plaintiffs from "presenting evidence of damages allegedly sustained by Ms. Brillman, JC Rehab, and CGB Rehab [collectively, the "ancillary plaintiffs"], because there is no direct link between the [ancillary plaintiffs'] claimed damages and any alleged conduct of IRIS."  IRIS' Mot. to Preclude Certain Economic Damage Evidence Asserted by Donald J. Krauss and Fightback for Autism as Assignees, at 4.  In other words, IRIS argues that the plaintiffs should be precluded from claiming these damages because they were not proximately caused by and are too remote from IRIS' conduct.

The alleged damages at issue include:

(1) Expenses paid by Ms. Brillman and CGB Rehab for Mr. Krauss' medical care and therapy equipment provided to Mr. Krauss;

(2) Expenses paid by JC Rehab associated with storing the broken LEGO baseplates for Fightback;

(3) Expenses paid by Ms. Brillman for contracting work Mr. Krauss could no longer perform at Ms. Brillman's properties; and

---

Here, none of the *Konstantopoulos* factors persuade the Court to exclude Mr. Grossman's revised report.  First, because Mr. Grossman's revised report is based on the same underlying theories and contains only minor changes (designed to alleviate IRIS' concerns), IRIS has not been prejudiced.  *See Hartle v. Firstenergy Generation Corp*, 7 F. Supp. 3d 510, 517 (W.D. Pa 2014) (finding that defendant was not prejudiced by plaintiff's untimely supplemental expert report because it was "based upon the same methods and correc[ted] minor errors"); *cf. Kremsky v. Kremsky*, Civ. No. 16-4474, 2017 U.S. Dist. LEXIS 216489, at *9–10 (E.D. Pa. Feb. 22, 2017) (finding that defendant was prejudiced by plaintiff's untimely supplemental expert report because it "included new data which 'significantly impacted' the earlier findings").  Second, to the extent IRIS thinks it has been prejudiced by the plaintiffs' supplemental expert report, this prejudice can be easily cured because the plaintiffs have offered to permit IRIS to depose Mr. Grossman prior to trial.  *See Id.* at *10–11 (finding that any prejudice caused by the supplemental expert report could be cured by allowing defendant to depose the expert prior to trial).  Third, the plaintiffs timely disclosed Mr. Grossman as a witness, so this factor is irrelevant.  Finally, there is no evidence of bad faith or gamesmanship on the part of the plaintiffs.  Therefore, the Court will not bar the plaintiffs from using Mr. Grossman's revised expert report.  IRIS remains free to prepare whatever cross-examination of Mr. Grossman is appropriate under the circumstances.

(4) Expenses paid by Ms. Brillman for Mr. Krauss' supplemental health insurance premiums.

The Court will deny IRIS' motion with respect to the first two categories of damages because these claims belong to Mr. Krauss and Fightback respectively, and there are no proximate cause issues. However, the Court will preclude the plaintiffs from pursuing damages for the contracting work done at Ms. Brillman's properties and for Mr. Krauss' supplemental health insurance premiums because these alleged damages are too remote from IRIS' alleged negligent conduct.

### A. *Mr. Krauss' Medical Expenses and Therapy Equipment*

IRIS argues that Mr. Krauss cannot recover for his medical expenses and therapy equipment paid for by Ms. Brillman and CGB Rehab because the claimed payments "are too remote from the alleged incident." *Id.* at 14. IRIS, however, confuses which plaintiff is—and always has been—entitled to claim recovery for Mr. Krauss' medical expenses and therapy equipment: Mr. Krauss himself. Because IRIS' misunderstanding stems from this case's admittedly cumbersome procedural history, the Court recounts a series of events dating back to the plaintiffs' third amended complaint.

In the third amended complaint, the plaintiffs asserted that IRIS' negligence caused Mr. Krauss to "incur[] significant medical expenses, which were reasonably foreseeable." Third Amended Complaint, at ¶ 86. Nevertheless, the plaintiffs also confusingly claimed that IRIS' negligence caused "Ms. Brillman's economic damages," including, "paying for Mr. Krauss' medical expenses." *Id.* at ¶ 87. Similarly, the plaintiffs alleged that IRIS' negligence caused "CGB [Rehab's] economic damages which includes providing Mr. Krauss with physical therapy equipment." *Id.* at ¶ 90.

Understandably, IRIS moved to dismiss these claims asserted by Ms. Brillman and CGB Rehab on summary judgment, arguing, like it does now, that neither of these plaintiffs could establish a direct link between their claimed damages and any alleged conduct committed by IRIS. During oral argument on IRIS' motion for summary judgment, however, IRIS' counsel "conced[ed] that if Mr. Krauss incurred medical expenses, he has a right to bring the claim." April 12, 2018 Oral Argument Tr. 34:9–11. In response, the Court explained that "if [Mr. Krauss has] already been compensated for his claims by either Ms. Brillman or . . . CGB Rehab . . . maybe he can nominally be the one who pursues it, but then he may owe it over to them based on whatever paperwork they've all executed," and IRIS' counsel agreed. *Id.* at 34:12–17. It became clear that what IRIS' counsel really feared was double recovery. *See Id.* at 31:15–17 (Mr. Bracaglia: "What I ask for in return is that I don't have to face those claims by three other plaintiffs." The Court: "There's one set of damages exposed. That's what you're talking about?" Mr. Bracaglia: "Yes, Your Honor.").

The Court summarized which plaintiffs could pursue damages in this case in its opinion resolving IRIS' motion for summary judgment:

> The main sources of damages are (1) contract damages based on the broken Legos, (2) Mr. Krauss's medical expenses, and (3) costs of storing the damaged Legos. One would expect these damages to be claimed by Mr. Krauss (who suffered physical injuries) and by Fightback (which agreed to purchase the Legos). Yet, in the third amended complaint, the *other* plaintiffs have asserted claims over portions of these damages.

May 3, 2018 Memorandum, at 19. The Court further explained that

> At oral argument, the Court asked the parties for their view on the best way to ensure that all of the personal injury and contract damages are accounted for, **with no risk of duplicative recoveries.** After oral argument, the plaintiffs resolved this issue: the three ancillary plaintiffs (Ms. Brillman, JC Rehab, and CGB Rehab) have assigned any claims over the Legos to Fightback, and any claims

> over Mr. Krauss's medical expenses to Mr. Krauss. These plaintiffs
> have not retained any claims."

(emphasis added).

Despite IRIS' counsel's concessions during oral argument on IRIS' motion for summary judgment, IRIS now argues that Mr. Krauss is barred from recovering his medical expenses that were paid for by Ms. Brillman and CGB Rehab. IRIS continues to refer to Mr. Krauss' medical expenses and the costs of his therapy equipment as "Ms. Brillman's" and "CGB Rehab's" economic damages and argues that the assignment does not cure the absence of proximate cause as to Ms. Brillman and CGB Rehab. However, it is Mr. Kraus who is—and always has been—entitled to bring a claim to recover these damages.[4]

Subrogation in the insurance context provides a useful analogy. As the Supreme Court of Pennsylvania has explained, an insurance carrier has "no independent cause of action for indemnification/contribution from the negligent party who caused the insurance carrier to pay the injured employee benefits." *Liberty Mut. Ins. Co. v. Domtar Paper Co. v. Domtar Paper Co.*, 113 A.3d 1230, 1239 (Pa. 2015). Rather, "the action against the third-party tortfeasor must be brought by the injured employee." *Id.* (citation and quotations omitted). That is not to say that "insurance companies may not -- and do not -- recoup losses caused by third-party tortfeasors, but only that their redress is limited to a right of subrogation." *New Jersey Carpenters Health Fund v. Philip Morris, Inc.*, 17 F. Supp. 2d 324, 330 (3d Cir. 1998).

---

[4]      The Court recognizes that IRIS is focused on the fact that Ms. Brillman and CGB Rehab assigned their claims concerning Mr. Krauss' medical costs to Mr. Krauss. However, as discussed above, the plaintiffs expressly pleaded in the Third Amended Complaint that as a result of IRIS' negligence, Mr. Kraus "incurred significant medical expenses, which were reasonably foreseeable." Third Amended Complaint, at ¶ 86. The assignment notwithstanding, these claims have been pleaded by Mr. Krauss in the third amended complaint. The assignment was made only to alleviate IRIS' concern about facing the same claim from multiple plaintiffs and the potential risk of double-recovery.

By comparison, Mr. Krauss is the injured party, and Ms. Brillman and CGB Rehab—who covered Mr. Krauss' medical expenses and the costs of his therapy equipment—are in roles akin to insurers. Although Mr. Krauss may or may not be required to reimburse Ms. Brillman and CGB Rehab if he ultimately prevails in this case, *he* is entitled to bring these claims, and there are no proximate cause or remoteness issues.[5]

Nor is Mr. Krauss prevented from seeking recovery for his medical expenses simply because third-parties paid those costs. In Pennsylvania, "the collateral source rule provides that payments from a third-party to a victim will not lower the damages that the victim may recover from a wrongdoer." *Allegheny Gen. Hosp. v. Philip Morris*, 228 F.3d 429, 442 (3d Cir. 2000); *see also Feeley v. United States*, 337 F.2d 924, 930 (3d Cir. 1964) ("In summing up Pennsylvania law . . .[,] where the payment is a true gift . . ., there can be double recovery."); *Ocasio v. Ollson*, 586 F. Supp. 2d 890, 904 (E.D. Pa. 2009) ("[T]he collateral source rule provides that payments from a collateral source shall not diminish the damages otherwise recoverable from the wrongdoer.") (citation and quotations omitted).

---

[5] The third-party standing and proximate cause cases cited by IRIS are not relevant. *See City of Phila. v. Beretta U.S.A. Corp*, 277 F.3d 415, 423 (3d Cir. 2002) (holding that the City had no standing to bring claims against gun manufacturers for costs allegedly associated with the criminal use of handguns because, among other reasons, the claims were "entirely derivative of those of others who would be more appropriate plaintiffs"); *Allegheny Gen. Hosp. v. Philip Morris*, 228 F.3d 429, 433 (3d Cir. 2000) (holding that hospitals in Pennsylvania had no standing to seek recovery of unreimbursed costs of health care provided to nonpaying patients suffering from tobacco-related disease because the hospitals' injuries were too remote from, and not proximately caused by, the tobacco companies' wrongdoing); *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 917–18 (3d Cir. 2000) (affirming the dismissal of similar claims brought by union health and welfare funds for the same reasons). Unlike in those cases—where the individuals who actually suffered the injury were not plaintiffs—Mr. Krauss—the injured party—is the plaintiff seeking damages here.

Therefore, Mr. Krauss can pursue recovery of his medical expenses and the costs of his therapy equipment whether they were paid by Mr. Krauss, Ms. Brillman, or CGB Rehab.[6]

**B.** *LEGO Storage Costs*

Similarly, IRIS argues that the plaintiffs cannot recover the LEGO storage costs paid for by JC Rehab because JC Rehab has no relationship with IRIS and there is no evidence that IRIS engaged in any allegedly tortious conduct directed at JC Rehab. Although JC Rehab paid to store the LEGOs, it did so on behalf of Fightback, which had a contractual relationship with IRIS and needed to store the LEGOs because of IRIS' alleged negligence and breach of contract. Thus, there are no proximate cause or remoteness issues with these damages. As he did with Mr. Krauss' ability to bring a claim to recover his medical expenses, IRIS' lawyer conceded that Fightback could bring a claim to recover the costs associated with the storage of LEGOs. He stated: "I'm going to allow [Fightback] to bring those claims. I'll deal with those claims on the merits." April 12, 2018 Oral Argument Tr. 31:14–15.

Therefore, Fightback can pursue recovery of the LEGO storage costs.

**C.** *Payments to Contractors for Work on Ms. Brillman's Properties*

The plaintiffs claim that Ms. Brillman is entitled to $18,665 for maintenance work done at her property in Guilford, Vermont and $5,572 for maintenance work done at her property in Bedford County, Pennsylvania because, but for this accident, Mr. Krauss would have performed

---

[6]     IRIS further argues that some of the alleged damages stemming from the therapy equipment CGB Rehab provided to Mr. Krauss should be precluded because there were no payments made *at all*, either by Mr. Krauss or by CGB Rehab on behalf of Mr. Krauss. The plaintiffs, on the other hand, insist that payments were made. The Court reminds the plaintiffs that if no one—neither Mr. Krauss nor CGB Rehab—incurred a measurable cost in connection with the therapy equipment at issue in this motion, there are no recoverable damages. However, because both parties offer diametrically opposed positions on this factual issue, the Court reserves this question for trial.

the work for free.  IRIS argues that evidence of these costs should be precluded because they are too remote to allow recovery.  The Court agrees.

The evidence is clear that Ms. Brillman personally owned the properties at issue.[7]  Ms. Brillman has not alleged that IRIS acted negligently toward her in any way.  Thus, the alleged injury suffered by Ms. Brillman—the maintenance costs stemming from Mr. Krauss' inability to work—are purely derivative of misfortunes visited upon Mr. Krauss.  Thus, there is no proximate cause as to these damages, and the plaintiffs may not pursue them.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1390 (2014) (explaining that the proximate cause requirement bars suits for alleged harm that "is purely derivative of misfortunes visited upon a third person by the defendant's acts") (citation and quotations omitted).

**D.** ***Mr. Krauss' Supplemental Health Insurance Premiums***

Finally, the plaintiffs claim that they are entitled to recover the monthly premiums for supplemental health insurance purchased by Ms. Brillman on behalf of Mr. Krauss following the accident.  However, Mr. Krauss' increased insurance premiums are too remote from IRIS' alleged negligence, and the Court will preclude the plaintiffs from seeking these alleged damages.

In *Whirley Indus., Inc. v. Sequel*, the Pennsylvania Superior Court concluded that a third party could not reasonably foresee that its conduct would cause increased worker's compensation insurance premiums because premium rates result from several factors, "many of which were entirely unrelated to the third party's alleged negligence in injuring a particular worker."  462 A.2d

---

[7]     At his deposition, Mr. Krauss testified that he and Ms. Brillman jointly own one acre of the 218-acre Bedford County property but that the rest of the property is owned solely by Ms. Brillman.  *See* Exhibit A to IRIS' Mot. *in Limine* to Preclude Certain Economic Damage Evidence, at 256:3–23.  There is no indication that the work paid for by Ms. Brillman was performed on the one jointly owned acre of the Bedford County Property.  Mr. Krauss also testified that all of the Vermont property is owned solely by Ms. Brillman.  *Id.* at 254:4–10.

800, 804 (Pa. Super. Ct. 1983).  The court explained that "insurance premium increases result from a concurrence of circumstances, including the owner's prior loss experience and the internal financial practices of the particular insurance carrier."  *Id.*  The Supreme Court of Pennsylvania cited *Whirley* favorably in *Liberty Mut. Ins. Co. v. Domtar Paper Co.*, 113 A.3d 1230, 1240 n.6 (Pa. 2015).

Although an injured party's request for reimbursement of his own supplemental health insurance premiums is arguably more foreseeable than the increased worker's compensation insurance premiums incurred by the injured party's employer in *Whirley*, and research reveals no Third Circuit or Pennsylvania cases on point, the same general concerns highlighted in *Whirley* are present here.  For example, the premiums for Mr. Krauss' supplemental health insurance are based on a variety of factors outside of IRIS' control, including the insurance company and the specific policy selected by Mr. Krauss and unrelated health issues Mr. Krauss may have.[8] Particularly, as is the case here, where the plaintiffs' own deposition testimony is the only evidence that Mr. Krauss needed supplemental health insurance *because of* IRIS' negligence, great caution is appropriate in the face of a claim by a negligence plaintiff to recover the cost of health insurance premiums.

In the absence of relevant authority allowing recovery of insurance premiums in the circumstances of this case, and upon consideration of case law outside of this jurisdiction disallowing recovery of increased insurance premiums in analogous situations, the Court predicts that the Supreme Court of Pennsylvania would not permit Mr. Krauss to recover the premiums for

---

[8]    It is a fact, not mere speculation, that Mr. Krauss has several health issues, including cardiovascular problems.  As explained in Section III below, Mr. Krauss has no expert evidence showing that the accident at issue in this case caused those cardiovascular conditions.

his supplemental health insurance.[9] *See Meier v. Chesapeake Operating*, 324 F. Supp. 3d 1207, 1217–19 (W.D. Okla. 2018) (barring plaintiffs from recovering premiums for increased earthquake insurance despite the plaintiffs' allegations that the defendants' negligence increased the likelihood of earthquakes and forced them to purchase additional insurance); *Nikolaus v. City of Baton Rouge*, 40. So. 3d 1244, 1249 (La. App. 1st Cir. 2010) ("[N]o right of action exists for recovery of insurance premiums based on a tortfeasor's negligence or strict liability."); *Johnson v. Broomfield*, 580 N.Y.S.2d 122, 123 (N.Y. Just. Ct. 1991) (concluding that the defendant would not have "foreseen, contemplated or expected" that a car accident caused by his negligence would result in the plaintiff having increased automobile insurance premiums because "the defendant has no control over the plaintiff's contractual relationships entered into or sought to be entered with plaintiff's insurer"). The plaintiffs here are barred from pursuing these damages at trial.

III. **IRIS' Motion to Preclude Certain Evidence Related to Mr. Krauss' Alleged Injuries**

IRIS seeks to preclude evidence related to Mr. Krauss' alleged neck, back, and knee injuries, heart condition, and strokes. IRIS argues that this evidence should be precluded because the plaintiffs do not offer expert testimony showing that any of these injuries or conditions were caused by the accident at issue here. The Court will grant this motion in part and deny it in part.

As for the neck and spine injuries, the plaintiffs plan to call Mr. Krauss' treating orthopedist as a witness. Because Mr. Krauss' treating physician did not submit an expert report, he cannot offer expert causation testimony based on facts that go beyond actual examination and treatment. *See Allen v. Parkland School Dist.*, 230 Fed. App'x 189, 194–95 (3d Cir. 2007). However, Mr.

---

[9] "As a federal court sitting in diversity, we must do what we predict the Pennsylvania Supreme Court would do." *Wassall v. DeCaro*, 91 F.3d 443, 445 (3d Cir. 1996) (citation omitted).

Krauss' treating physician can testify as to "his diagnosis of the Plaintiff . . . and [how] that diagnosis was reached." *Id.*

Mr. Krauss also plans to testify concerning his neck, spine, and knee injuries. Courts in this Circuit have allowed plaintiffs to testify about the extent and cause of their injuries under Rule Rule 701 so long as their testimony is "based on . . . first-hand knowledge and observation and is helpful to the jury." *See*, *e.g.*, *Chladek v. Milligan*, Civ. No. 97-355, 1998 U.S. Dist. LEXIS 9209, at *8 (E.D. Pa. 1998) (permitting the plaintiff to testify about the extent and the causation of his injuries) (citing *Bushman v. Halm*, 798 F.2d 651, 660 (3d Cir. 1986)). Here, Mr. Krauss was nearly crushed by 2,000 pounds of LEGOs and plans to testify that he suffered neck, back, and knee pain after the accident. It is obvious and understandable to a jury that these types of injuries may be caused by this type of accident. Although Mr. Krauss will not be permitted to diagnose himself, he will be permitted to discuss his own experience and pain.

Mr. Krauss also plans to testify about his alleged heart conditions and his need to use a heart monitor following the accident. Unlike the the neck, spine, and knee injuries, it is not obvious to a lay person that this type of accident caused Mr. Krauss' heart conditions. Therefore, Mr. Krauss will be precluded from testifying about his alleged heart conditions and his heart monitor. *See Kimmel v. Pontiakowski*, Civ. No. 13-2229, 2014 U.S. Dist. LEXIS 162022, at *9 (M.D. Pa. Nov. 19, 2014) ("Pennsylvania law provides that 'expert medical testimony is necessary to establish the causal nexus of the injury to the tortious conduct in those cases where the connection is not obvious.") (citing *Maliszewski v. Rendon*, 542 A.2d 170, 172 (Pa. Super. Ct. 1988)); *In re Paoli R.R. Yard Pcb Litig.*, Civ. No. 86-2229, 2000 U.S. Dist. LEXIS 12993, at *8 (E.D. Pa. Sept. 6, 2000) ([U]nequivocal medical testimony is necessary to establish the causal connection in cases

where there is no obvious causal relationship between the accident and the injury.") (citation omitted).

Finally, the plaintiffs concede that no doctor has diagnosed the cause of Mr. Krauss' strokes. They claim that Mr. Krauss is still seeking treatment and undergoing examinations. They agree that if Mr. Krauss does not receive a diagnosis as to the cause of his strokes at a reasonable time before the trial is scheduled, then evidence of Mr. Krauss' strokes should be precluded. The Court has not received any indication that such a diagnosis has been made. Therefore, Mr. Krauss will be precluded from testifying about his strokes.

IV. **IRIS' Motion to Preclude Evidence Concerning Mr. Krauss' Loss of Income from His Inability to Harvest Trees**

IRIS argues that any loss of income associated with Mr. Krauss' inability to harvest trees is speculative and without foundation. Again, the Court agrees.

"'[T]he general rule of law applicable for loss of profits . . . allows such damages where (1) there is evidence to establish them with reasonable certainty, and (2) there is evidence to show that they were the proximate consequence of the wrong. . . .'" *Power Restoration Int'l, Inc. v. PepsiCo, Inc.*, Civ. No. 12-1922, 2015 U.S. Dist. LEXIS 32415, at *18 (E.D. Pa. Mar. 16, 2015) (quoting *Delhanty v. First Pa. Bank, N.A.*, 464 A.2d 1243, 1258 (Pa. Super. Ct. 1983)). But lost profits cannot be recovered "where they are merely speculative." *Delhanty*, 464 A.2d at 1258. "A review of the cases in Pennsylvania involving lost profits shows that the courts are reluctant to award them, except when the business concerned is established and not 'new and untried.'" *Id.* In the absence of business history, evidence of lost profits "must be substantial and it must be shown to have a close relationship to the individual firm in question as well as the relevant economic and financial conditions prevailing at the time the losses occurred." *Power Restoration*,

2015 U.S. Dist. LEXIS 32415, at *22 (quoting *Merion Spring Co. v. Muelles Hnos. Garcia Torres, S.A.*, 462 A.2d 686, 695–96 (Pa. Super. Ct. 1983)).

It is undisputed that, other than the sale of six trees between 2010 and 2011, Mr. Krauss has not earned income selling trees since 1966. *See* Exhibit A to IRIS' Mot. *in Limine* to Preclude Evidence of Claimed Loss of Income from Harvesting Trees, at 39:21–40:10; Exhibit B to the Plaintiffs' Response, at 45:11–46:7. Without any business history supporting their claims of lost profits, the plaintiffs are left with Mr. Krauss' and Ms. Brillman's testimony concerning their expenses, labor, inventory, and expected profits. But at his deposition, Mr. Krauss admitted that he had not secured buyers for any of his trees prior to the accident, Exhibit A to IRIS' Mot. *in Limine* to Preclude Evidence of Claimed Loss of Income from Harvesting Trees, at 40:11–43:7, that he has "no clue" how the timber market has fared between the date of the accident and 2017, *id.* at 60:24–61:9, and that he cannot support his testimony with any documentation. *Id.* at 11:13–14:10. And Ms. Brillman admitted that she is not an expert in "any trees," Exhibit B to IRIS' Mot. *in Limine* to Preclude Evidence of Claimed Loss of Income from Harvesting Trees, at 145:1–2, and that her knowledge of the pricing of trees is based on internet research and her conversations with foresters, not her own personal experiences. *Id.* at 150:23–151:5.

"Although [an individual] may offer lay opinion testimony on the issues of lost profits, based on facts within his or her personal knowledge or that are independently admissible, conclusory assertions simply do not constitute the 'substantial evidence' required to prove lost profit damages for a new business." *Power Restoration*, 2015 U.S. Dist. LEXIS 32415, at *27 (citing *Lighting Lube v. Witco Corp.*, 4 F.3d 1153, 1175–76 (3d Cir. 1993)). The record here has no basis for the projections offered by either Mr. Krauss or Ms. Brillman. Rather, "it is as easy to conclude the [plaintiffs'] estimates [are] 'pie in the sky' as to conclude that they [bear] any relation

to reality." *Id.* The plaintiffs are "barking" up the wrong tree, and the Court will preclude them from offering evidence of Mr. Krauss' alleged lost profits.[10]

## V. The Plaintiffs' Motion to Preclude Evidence Concerning Mr. Krauss' Criminal Conviction

Finally, the plaintiffs argue that IRIS should be precluded from introducing evidence concerning Mr. Krauss' 1995 criminal conviction for indecent assault, indecent exposure, and corrupting the morals of a child. The Court completely agrees.

Mr. Krauss' 1995 conviction has no relevance to the facts at issue in this case. Nor is evidence of his 24-year-old conviction admissible under Federal Rule of Evidence 609(b). Rule 609(b) provides that a conviction older than 10 years is admissible only if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Although Mr. Krauss' conviction for indecent assault, indecent exposure, and corrupting the morals of a child arguably involved a breach of trust, "sex offenses are generally considered not to be probative of a witness's veracity." *United States v. Ivins*, Civ. No. 09-320, 2010 U.S. Dist. LEXIS 63894, at *8–9 (E.D. Pa. June 28, 2010) (citing Joseph M. McLaughlin, Ed., Weinstein's Federal Evidence § 609.04(3)(b)); *see also Sharif v. Picone*, 740 F.3d 263, 273 (3d Cir. 2014) ("[O]ften, crimes of violence are less probative of honesty than are crimes involving deceit or fraud.").

Moreover, with sex offenses, "the jury is likely to draw the prejudicial inference that the witness is a bad person." *Ivins*, 2010 U.S. Dist. LEXIS 63894, at *9 (quoting *United States v. Estrada*, 430 F.3d 606, 618 (2d Cir. 2005)). Thus, the negligible probative value of Mr. Krauss'

---

[10] The Court notes, however, that the plaintiffs will be permitted to seek damages for actual expenses incurred in connection with Mr. Krauss' trees that allegedly died as a result of the accident.

1995 conviction does not outweigh—let alone substantially outweigh—its potential prejudicial effect.

IRIS also argues that it should be permitted to offer evidence of Mr. Krauss' 1995 conviction because his answers to questions concerning his conviction at his deposition were "deceptive." Specifically, IRIS argues that Mr. Krauss stated that he was convicted of "assault" and failed to clarify that this assault was of a sexual nature and was committed against a minor. However, this Court will foreclose such an argument, particularly because the underlying conviction itself is inadmissible.

For these reasons, the defendants are precluded from offering evidence concerning Mr. Krauss' 1995 conviction. The Court may re-visit this issue if the plaintiffs were to try to offer evidence at trial purporting to show that Mr. Krauss is generally a good person.

**CONCLUSION**

For the foregoing reasons, the Court will:

(1) Deny IRIS' *Daubert* motion;

(2) Grant in part and deny in part IRIS' motion to preclude evidence of damages allegedly sustained by Ms. Brillman, JC Rehab, and CGB Rehab;

(3) Grant in part and deny in part IRIS' motion to preclude evidence related to Mr. Krauss' alleged injuries;

(4) Grant IRIS' motion to preclude evidence concerning Mr. Krauss' loss of income from his inability to harvest trees; and

(5) Grant Mr. Krauss' motion to preclude evidence concerning Mr. Krauss' 1995 criminal conviction.

An appropriate order follows.

BY THE COURT:

<u>S/Gene E.K. Prtter</u>
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE